In the United States Court of Appeals
for the Eighth Circuit

| | | |
|---|---|---|
| SORPTIVE MINERALS INSTITUTE, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | **No. 24-1889** |
| MINE SAFETY AND HEALTH ADMINISTRATION, and JULIE SU, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) ) ) ) | |
| Respondents. | ) | |

**PETITIONER'S REPLY TO MINE SAFETY AND HEALTH ADMINISTRATION'S RESPONSE TO MOTION TO COMPLETE ADMINISTRATIVE RECORD**

When reviewing an agency rulemaking under the APA, a court must review "the whole record," 5 U.S.C. § 706(2), which means "the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). The "whole" administrative record, therefore, "consists of *all documents and materials directly or indirectly considered* by agency decision-makers and includes evidence contrary to the agency's position." *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex. 1981)

1

(emphasis added). Petitioner moved to complete the Administrative Record because the record as compiled by MSHA "does not include several studies *directly or indirectly considered* by MSHA during the rulemaking process." (Motion at 1) (emphasis added)

In its Response, MSHA avoids addressing whether it considered the excluded studies, while implying it did not. *See Response*, p. 2 (arguing that "SMI has cited no case holding that an agency must include in the administrative record every document or other evidence that is referenced by a commenter," and asserting "courts are skeptical that an agency has *considered* a document when the document is referenced and discussed in a public comment letter.") (emphasis added).

But either MSHA "considered" the evidence and studies presented by SMI, in which case they must be included in the record, *Exxon Corp.*, 91 F.R.D. at 33, or MSHA did *not* consider the evidence, in which case it has bigger problems – for an agency "must examine the relevant data," and so "cannot ignore evidence contradicting its position." *Genuine Parts Co. v. Env't Prot. Agency*, 890 F.3d 304, 312 (D.C. Cir. 2018). That is, an agency may not exclude from the record pertinent but unfavorable information. *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345

F. Supp. 3d 1, 10 (D.D.C. 2018) ("An agency may not scrub the record of all evidence that does not support [its] final decision."); *Blue Ocean Inst. v. Gutierrez*, 503 F.Supp.2d 366, 369 (D.D.C. 2007) (An agency "may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made."); and *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016) ("As part of the record, the Court may consider *any document that might have influenced the agency's decision* and not merely those documents the agency expressly relied on in reaching its final determination.") (emphasis added).

SMI has long suspected the government did not truly or in good faith "consider" the voluminous scientific data and evidence SMI repeatedly presented throughout the rulemaking process; else it would have agreed with its sister agency OSHA, which a few short years earlier reviewed largely the same evidence and found "no sound basis" to include sorptive clays within its revised silica standard. Still, it is quite shocking to see the Agency fight so hard to exclude from the record the studies it admits were at the heart of SMI's opposition to the Final Rule, for in taking this stance, MSHA is now (implicitly, and in three instances,

3

explicitly) admitting it *did not consider* that evidence, contrary to its promise to do so and its repeated statements that it had in fact done so.

## I. MSHA Promised to Review the Studies Cited by SMI

As explained in the Motion to Complete, SMI presented testimony and slides to MSHA at the public hearing held during the rulemaking. (A.R. 1375, at 40-69) At that hearing, MSHA Deputy Assistant Secretary for Operations Pat Silvey ("Silvey"), who was moderating the hearing, repeatedly interrupted the presentation of SMI representative Richard Brown. (A.R. 1375, at 53-55, 61, 62)[1]

In so doing, however, Silvey specifically assured Brown that MSHA would review both his presentation slides *and the referenced studies*. (A.R. 1375, at 61) (Silvey stating "I see where you have a number of studies," "[a]nd we are going to look at those.") Moments later, Silvey again cut off Brown, reiterating "[w]e will look at your entire presentation," "I promise you that," and urged him to "expedite." (*Id.* at 62) Following this third interruption, based on Silvey's representations

---

[1] Silvey first cut off Brown to helpfully note an obvious typo, then said: "since I've already interrupted you and we have all your slides *to put in the record*. And I get your point. Is there any way you think you can summarize?" (A.R. 1375, at 53) (emphasis added) This exchange caused counsel for SMI to yield her own time to Mr. Brown to present the "important science behind our analysis." (*Id.* at 54)

4

that MSHA would review the presentation *and the studies*, counsel for SMI indicated on the record: "I just want to recognize that the slides *and the studies* are going to be in the record, of course." (*Id.*) (emphasis added) Silvey did not express any disagreement with counsel's stated understanding. (*Id.*)

## II. MSHA Repeatedly Represented that it Had in Fact Reviewed the Studies Cited by SMI

Consistent with Silvey's promise that MSHA would "look at" the studies cited by SMI in its slides, the Final Rule repeatedly represents that the Agency did in fact consider those studies. For instance, specifically referring to the studies SMI presented, MSHA said it "evaluated *all the evidence* submitted by commenters during the rulemaking process, including the hearings," 89 Fed. Reg. at 28302, "examined *evidence and references* from the commenters and conducted its own review of the scientific literature," *Id.* at 28256, and "considered commenters' *statements and evidence* regarding the toxicity of quartz in sorptive mineral." *Id.* at 28303 (emphasis added)[2]

---

[2] The reference to "commenters" is a specific reference to SMI, EMA and Vanderbilt Minerals, LLC. 89 Fed. Reg. at 28301. In addition, MSHA specifically cited "Attachment 2" to SMI's comments (which MSHA attached to its response to the instant Motion as Attachment B) and which includes ten of the fourteen studies subject to this Motion. *Id.* at 28303.

5

Noting that SMI "expressed concern that not all relevant studies were considered in MSHA's analysis of the health effects literature on occupational exposure to respirable crystalline silica," 89 Fed. Reg. at 28254, MSHA expressly asserted it had "reviewed the relevant literature, including recent publications. Additionally, in response to comments on the [preliminary risk analysis], *MSHA read and reviewed studies suggested by commenters*." *Id*. at 28255 (emphasis added)

Finally, in its "Summary and Explanation of the Final Rule," MSHA again asserted it "examined research references from commenters and has conducted its own review of the scientific literature," and asserted that "[t]hese studies *do not disprove* the health-based risks associated with exposure to respirable crystalline silica or support a conclusion that sorptive minerals present no risk." *Id*. at 28303.

### III. The Studies Should Be Included in the Administrative Record Because They Were Directly or Indirectly Considered By MSHA.

In the face of its own admissions that it "evaluated," "examined," "considered," and "read and reviewed [the] studies suggested by commenters," MSHA apparently asserts that because SMI did not provide MSHA *actual physical copies* of the 14 studies, this somehow

6

justifies MSHA excluding them from the record. (Response, p. 2) (noting that while "SMI's submissions are in the administrative record filed with this Court," "SMI did not, however, submit the full documents referenced in its list[.]")[3]

However, "[t]he issue does not turn on whether specific documents were in the direct, physical possession of agency decisionmakers, but whether they were directly or indirectly *considered* by those decisionmakers." *Fort Sill Apache Tribe*, 345 F. Supp. 3d at 10 (emphasis by court). Because the Final Rule repeatedly asserts that MSHA "evaluated," "examined," "read and reviewed," and yes, "considered" the studies, they must be included in the record. *Id*. In fact, where "a party provides concrete, non-speculative evidence that material an agency did actually consider either directly or indirectly is absent from the record … that should be the end of the matter." *Univ. of Colorado Health at Mem'l*

---

[3] In sharp contrast, MSHA included two studies cited by American College of Occupational and Environmental Medicine ("ACOEM"), *see* MSHA-2023-0001-1503 (available at https://www.regulations.gov/document/MSHA-2023-0001-1503) (Chilosi et al. (2003)), and MSHA-2023-0001-1486 (available at https://www.regulations.gov/document/MSHA-2023-0001-1486) (Chen et al. (2018)) despite the fact that apparently only ACOEM cited these studies, and no record evidence suggests ACOEM attached the studies or otherwise provided the studies to MSHA. *See* https://www.regulations.gov/document/MSHA-2023-0001-1405 (ACOEM Comment, at p. 2, n. 2 and n. 6)

7

*Hosp. v. Burwell*, 151 F. Supp. 3d 1, 14 (D.D.C. 2015), on reconsideration, 164 F. Supp. 3d 56 (D.D.C. 2016).

Moreover, MSHA admits that SMI's written comments in the rulemaking process "discussed" 12 of the 14 studies at issue in this Motion; accordingly, it suggests "the record already contains ... the salient parts of these studies[.]" (Response, p. 4) Of course, that means that to the extent it considered SMI's written comments, MSHA considered the "salient parts" of 12 of the studies, which strongly suggests those studies should be a part of the administrative record. *See Knight* v. *U.S. Army Corps of Engineers*, No. 4:18-CV-352, 2019 WL 3413423, at *1 (E.D. Tex. July 29, 2019) ("a party is allowed to . . . complete or supplement the record where . . . there is a reasonable basis to believe that materials considered by agency decisionmakers are not in the record.").

As to the other two studies, MSHA asserts that "SMI already had its chance to explain their significance to the agency" and "it is contrary to basic principles of administrative law to give it another chance now." (Response, p. 4)

But the fact remains that MSHA promised SMI it would consider the very studies it has now excluded, and that SMI understood that those studies would therefore be included in the record. (A.R. 1375, at 62) In addition, MSHA's rulemaking repeatedly asserts that MSHA *did in fact* consider those studies. 89 Fed. Reg. at 28255, 28256, 28302, 28303. Because MSHA considered the studies as part of its rulemaking, the studies must be included in the record. *Mandan v. U.S. Dept. of the Interior*, Case No. 1:19-cv-037, 2019 U.S. Dist. LEXIS 234230, at *5 (D.N.D. Nov. 1, 2019) ("The administrative record consists of all documents and materials directly or indirectly considered by the agency."). *See also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (same).

If an agency prepares an administrative record that excludes the best evidence and latest scientific data presented to the agency because that evidence and data points to a conclusion contrary to the agency's liking, the administrative record is not complete. *See Walter O. Boswell Memorial Hospital v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (Reviewing "less than the full administrative record . . . might allow a party to withhold evidence unfavorable to its case.").

9

Indeed, judicial review cannot function if an agency is permitted to decide unilaterally what constitutes the administrative record. Effective review depends upon the record containing all relevant materials presented to the agency, including not only materials supportive of the government's decision but also materials contrary to the government's decision. *See Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 – 44 (1983). Otherwise, the reviewing court cannot engage in the "thorough, probing, in-depth review" required by the APA. *Overton Park*, 401 U.S. at 415 – 416.

It is worth noting that SMI presented the studies in several formats, including a slide presentation, testimony offered during the public hearing, and a 21-page written comment to the proposed rule during, in some cases all three. *See* Mot. to Complete at 9-11. (*See also* A.R. 1446, 1375) In response, MSHA suggests rulemaking is not a game, (*see* Response at 4-5), and casts aspersions on SMI's comment submitted during the rulemaking process. *See id.* at 3-4. SMI denies any assertion its position is not fully supported, then or now. This is the bottom line: if MSHA considered the studies, they must be included in the administrative record. *Overton Park*, 401 U.S. at 420.

## IV. MSHA Conclusively Admits It Did Not Consider At Least Three Studies Submitted by SMI.

In its Response, MSHA now asserts it "d[id] not have access to" three studies included within this Motion, and that "the record certainly should not be supplemented with studies that were not even available to [MSHA] during the rulemaking." (Response, p. 5) Two of these studies were referenced in SMI's slides, (A.R. 1446, Att. 1, p. 13-14) and all three were referenced in Brown's testimony at the public hearing, (A.R. 1375, at 48-49) and in SMI's written comments. (Response, Ex. A, at p. 14) Thus, despite MSHA's promise to review these studies (A.R. 1375, at 61) and SMI's confirmation that they would therefore be included in the record (*Id.* at 62), MSHA now admits it *did not even look at them.*

Finally, this Court should address and weigh the discrepancy between MSHA's representations to the regulated community in the Final Rule that it fully considered all submitted evidence, specifically including the studies at issue here, and its implicit and explicit assertions to this Court that it did *not* consider those same materials. *See Nat'l Mining Ass'n v. MSHA*, 116 F.3d 520, 527 (D.C. Cir. 1997) ("As part of its explanation, the agency must respond to specific challenges that are sufficiently central to its decision."). Simply put, "an agency cannot

ignore evidence that undercuts its judgment." *Genuine Parts Co.*, 890 F.3d at 312.[4]

## **CONCLUSION**

Accordingly, SMI respectfully asks that this Court grant its Motion to Complete and compel MSHA to include the 14 studies in the administrative record.

Date: December 13, 2024

Respectfully submitted,

*/s/ Mark Trapp*
Mark M. Trapp
CONN MACIEL CAREY LLP
53 West Jackson Boulevard
Suite 1352
Chicago, Illinois 60604
(312) 809-8122
mtrapp@connmaciel.com

*Counsel for Sorptive Minerals Institute*

---

[4] SMI will address in its Reply Brief on the merits MSHA's new representation that it did *not* consider the evidence SMI presented and the legal implications of that failure to consider evidence contrary to its preferred position.

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FRAP 27(d)(2)(C) because this document contains 2,289 words excluding the parts of the document exempted by FRAP 32(f).

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Century Schoolbook font.

*/s/ Mark Trapp*

# CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Mark Trapp*