# In the
# United States Court of Appeals
## for the Eighth Circuit

———— • ————

Sorptive Minerals Institute,

*Petitioner,*

v.

Mine Safety and Health Administration, et al.,

*Respondents.*

**No. 24-2661**
National Stone, Sand, and Gravel Association, et al.,

*Petitioners,*

v.

Mine Safety & Health Review Administration, et al.,

*Respondents.*

**No. 24-2663**
Sorptive Minerals Institute, et al.,

*Petitioners,*

v.

Mine Safety & Health Review Administration, et al.,

*Respondents.*

_____

Petitioners for Review of an Order of the Federal Mine Safety & Health Administration
(89 FR 28218) (MSHA-2023-0001)

**BRIEF OF *AMICI CURIAE* UNITED MINE WORKERS OF AMERICA INTERNATIONAL UNION; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL, AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC; AND THE NATIONAL BLACK LUNG ASSOCIATION IN SUPPORT OF RESPONDENTS AND REVERSAL**

Kevin F. Fagan, General Counsel
Hill Pickens, Staff Attorney
United Mine Workers of America
18354 Quantico Gateway Drive, Suite 200
Triangle, VA 22172
(703) 291-2425

*Counsel to Amici Curiae United Mine Workers of America International Union, and National Black Lung Association*

David Jury, General Counsel
Keren Wheeler, Associate General Counsel
United Steelworkers
Boulevard of the Allies, Room 807
Pittsburgh, PA 15222-1209
(412) 562-2413

*Counsel to Amicus Curiae United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC*

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT OF THE UNITED MINE WORKERS OF AMERICA INTERNATIONAL UNION**

The United Mine Workers of America International Union ("UMWA") is a labor organization within the meaning of Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, and is an unincorporated association which had no parent corporation and whose members have no ownership interests in the association. No publicly held corporation owns 10% or more of its stock. The UMWA represents thousands of unionized miners at coal, metal, and nonmetal mines who are affected by the Silica Rule.

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT OF THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL, AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC**

The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO/CLC ("USW") is a labor organization within the meaning of Section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185, and is an unincorporated association which had no parent corporation and whose members have no ownership interests in the association. No publicly held corporation owns 10% or more of its stock. The USW represents thousands of miners at metal and non-metal mines throughout the United States who are affected by the Silica Rule.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT OF THE NATIONAL BLACK LUNG ASSOCIATION

The National Black Lung Association is an unincorporated association which has no parent company and whose members have no ownership interest in the association. No publicly held corporation owns 10% or more of its stock. The National Black Lung Association represents hundreds of active and retired miners suffering from coal workers pneumoconiosis ("CWP" or "black lung"). The National Black Lung Association advocates for increased occupational safety measures to eliminate CWP permanently.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENTS ......................................................i

TABLE OF AUTHORITIES ..................................................................v

I.      INTEREST OF AMICI CURIAE.................................................1

II.     INTRODUCTION ........................................................3

III.    ARGUMENT...............................................................6

       1.      The *Benzene* Case Reads Section 3(8) of the OSH Act to Require a Significant Risk Finding Before OSHA may Promulgate an Occupational Safety and Health Standard ...................6

       2.      The *Benzene* Case Does Not Apply to the Mine Act and MSHA...............................................................9

       3.      The Text of the Mine Act Does Not Support an Implied "Significant Risk" Requirement.........................................11

       4.      The Eleventh Circuit Correctly Decided That the Mine Act Contains No "Significant Risk" Requirement ....................................13

       5.      Petitioners' Arguments that the Eleventh Circuit Erred in *NMA* fail ...............................................................15

       6.      Petitioners Seek to Create an Unnecessary Circuit Split ....................21

IV.    CONCLUSION.............................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*American Petroleum Institute v. OSHA*,
  581 F.2d 493 (5th Cir. 1978)....................................................................6

*Ford Motor Credit Co. v. Mierkowski (In re Mierkowski)*,
  580 F.3d 740 (8th Cir. 2009)...................................................................21

*Industrial Union Department, AFL-CIO v. American Petroleum Institute*,
  448 U.S. 607 (1980) .................................................................... *passim*

*Intl. Union, United Mine Workers v. Mine Safety & Health Admin.*,
  407 F.3d 1250 (D.C. Cir. 2005) ...............................................................20

*Kennecott Greens Creek Mining Co.* v. MSHA (*"Kennecott Greens"*),
  476 F.3d 946 (D.C. Cir. 2007) ....................................................... 18, 19

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ...............................................................................19

*National Mining Association v. United Steelworkers (*"NMA"*)*,
  985 F.3d 1309 (11th Cir. 2021)............................................... 13-18, 20

*Nat'l Mining Ass'n v. MSHA*,
  116 F.3d 520 (D.C. Cir.1997) ....................................................... 19, 20

*Owens v. Miller (In re Miller)*,
  276 F.3d 424 (8th Cir. 2002)...................................................................21

*Sec'y of Labor v. Cranesville Aggregate Cos., Inc.*,
  878 F.3d 25 (2d Cir. 2017)........................................................................7

*Steelworders v. Mine Safety & Health Admin.*,
  925 F.3d 1279 (D.C. Cir. 2019) ..............................................................20

*United States v. Games-Perez*,
  695 F.3d 1104 (10th Cir. 2012)...............................................................21

**Statutes & Other Authorities:**

5 U.S.C. § 500 ................................................................19

29 U.S.C. § 651 .................................................................5

29 U.S.C. § 652(8) ............................................................7

29 U.S.C. § 653(b)(1) ........................................................7

29 U.S.C. § 655(b)(5) ........................................................8

30 U.S.C. § 801 .................................................................5

30 U.S.C. § 801(c) ...................................................... 12, 15

30 U.S.C. § 801(d) ...........................................................15

30 U.S.C. § 801(e) ...........................................................12

30 U.S.C. § 801(g) ...........................................................12

30 U.S.C. § 811(a) ...........................................................10

30 U.S.C. § 811(a)(6)(A) ....................................................4

30 U.S.C. § 811(a)(9) ........................................................20

30 U.S.C. § 811(d) ...........................................................13

Examinations of Working Places in Metal and Nonmetal Mines,
   82 Fed. Reg. 7680 (2017) ...........................................13

Lowering Miners' Exposure to Respirable Crystalline Silica and Improving
   Respiratory Protection , 89 Fed. Reg. 28,218
   (April 18, 2024) ("Silica Rule") ............................... *passim*

*Merriam Webster Dictionary Online,* "Risk" .......................11

# I.    INTEREST OF *AMICI CURIAE*[1]

The United Mine Workers of America International Union ("UMWA") is the largest union of coal miners in North America, representing tens of thousands of active and retired miners. The UMWA proudly represents workers in and around underground coal mines, surface mining operations, and preparation plants. The UMWA's members work in coal mines and other mines and are exposed to the hazards in mining which MSHA was established to reduce and eliminate. The UMWA's members suffer from injuries, occupational disease, and death as a result of these hazards, including death from black lung and silicosis resulting from exposure to respirable silica during their working lives. For these reasons, the UMWA has long advocated for MSHA to promulgate a standard limiting miner exposure to respirable silica. In 2023, the UMWA submitted comments supporting the strengthening and adoption of the MSHA Proposed Rule Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection. When the Final Rule issued in April 2024, the UMWA advocated for the swift application of the new standard to mines and employers within MSHA's jurisdiction for the benefit of the miners represented by the UMWA.

---

[1] No counsel for any party authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person, other than the *amici curiae*, their members, or their counsel, contributed money that was intended to fund preparing or submitting the brief.

The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO/CLC ("USW") is the largest industrial union in North America, representing workers in steel, aluminum, and other metals; paper; rubber; glass; cement; mining; chemicals; refining; energy; utilities; healthcare; education; service; and other sectors. The USW is the predominant labor union in North American metal and non-metal ("MNM") mining, representing approximately 20,000 miners in the United States and an equivalent number in Canada. The miners represented by the USW work in underground and surface mines and quarries, using many different mining methods, mining almost every commodity. USW members face almost every health and safety hazard in the mining environment, including the hazard of exposure to respirable crystalline silica. Because USW members suffer the risks of silica exposure, including deadly silicosis and lung cancer, the USW has long advocated that MSHA update its protections to reduce miners' exposure to this known and recognized hazard. In 2023, the USW submitted comments supporting the strengthening and adoption of the MSHA Proposed Rule Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection. When the Final Rule issued in April 2024, the USW advocated for the swift application of the new standard to mines and employers within MSHA's jurisdiction for the benefit of the miners represented by the USW.

The National Black Lung Association is the largest national organization advocating for those suffering from coal workers' pneumoconiosis ("CWP" or "black lung"). With hundreds of members organized into chapters across the nation's coalfields, the National Black Lung Association assists active, retired, and disabled miners with applications for black lung benefits and advocates for increased occupational health measures to eliminate CWP once and for all. In 2023, the National Black Lung Association submitted comments supporting the strengthening and adoption of the MSHA Proposed Rule Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection.

## II.    INTRODUCTION

On April 18, 2024, the Mine Safety and Health Administration ("MSHA") issued, pursuant to its statutory authority, an improved standard regulating miner exposure to respirable silica, Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection ("Silica Rule"), 89 Fed. Reg. 28,218 (April 18, 2024). Among other provisions, the Silica Rule sets an exposure limit of respirable silica at 50 micrograms per cubic meter of air, and prescribes certain means of compliance with that exposure limit, prioritizing engineering over administrative controls.

These consolidated cases involve two petitions for review of the Silica Rule filed by trade groups representing various segments of the metal and nonmetal

("MNM") mining industry as well as certain mine operators subject to the Silica Rule. These petitioners, along with two further trade groups participating as *amici curiae* in support of the petitioners, challenge the Silica Rule on various grounds, primarily that the Silica Rule was promulgated in contravention of prevailing law and MSHA's statutory authority.

The United Mine Workers of America International Union ("UMWA"); the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW"); and the National Black Lung Association (collectively, "Miner Representatives") support the Respondents: this Court should deny the petitions and affirm the Silica Rule. The Silica Rule is a crucial regulatory intervention in an industry with lately rising rates of coal workers' pneumoconiosis ("CWP" or colloquially "black lung") and silicosis largely attributable to increased exposure to respirable silica dust. The Silica Rule was rationally formulated on the basis of the best available evidence to assure that "no miner will suffer material impairment of heath or functional capacity" due to exposure to respirable silica. 30 U.S.C. § 811(a)(6)(A).

The Miner Representatives have submitted this brief to address whether MSHA is required to make a threshold finding of a "significant risk" before issuing a regulation, which is the central contention raised in the opening brief filed by Petitioners Sorptive Minerals Institute and Blue Mountain Production Company

("Petitioners"). *See* Petitioners' Brief at 14-38. Petitioners rely on *Industrial Union Department, AFL-CIO v. American Petroleum Institute*, 448 U.S. 607 (1980) ("*Benzene*"), where the Supreme Court, within the context of a disputed regulation promulgated by the Occupational Safety and Health Administration ("OSHA"), held that the express language of the Occupational Safety and Health ("OSH") Act, 29 U.S.C. §§ 651 et seq., requires OSHA to find a "significant risk" before it may engage in regulation. Petitioners argue that *Benzene* should apply to MSHA as well as OSHA.

For the reasons set forth below, the Miner Representatives submit that the Court should decline to impose this standard on MSHA's regulatory authority. The pertinent provisions of the Federal Mine Safety and Health Act of 1977 ("Mine Act"), 30 U.S.C. §§ 801 et seq., differ from those in the OSH Act which the *Benzene* Court analyzed to find the "significant risk" requirement solely with respect to OSHA regulation. Despite Petitioners' wish to expand that holding and to apply it to regulations promulgated by MSHA, such a result is contrary to the discrete and limited holding in *Benzene*.

# III.   ARGUMENT

**1.  The *Benzene* Case Reads Section 3(8) of the OSH Act to Require a Significant Risk Finding Before OSHA may Promulgate an Occupational Safety and Health Standard.**

In 1977, OSHA issued a temporary emergency rule that limited concentrations of benzene in certain workplaces to 1 part per million (ppm) of air.  This regulation replaced a previous regulation promulgated in 1971 that capped concentrations of benzene in certain workplaces at 10 ppm of air.  During the pendency of the temporary rule, the American Petroleum Institute ("API"), the oil industry's national trade association,  filed for judicial review in the U.S. Court of Appeals for the Fifth Circuit, and the court stayed the temporary standard.   Next, OSHA issued a notice of proposed rulemaking to lower the benzene exposure limit to 1 ppm on a permanent basis and in February 1978, OSHA issued a final rule that codified the 1 ppm standard.  API again filed for judicial review, and, in 1978, the Fifth Circuit held that OSHA, in promulgating its permanent rule, had exceeded its statutory authority because its pre-regulatory findings were not supported by the administrative record.   *American Petroleum Institute v. OSHA*, 581 F.2d 493 (5th Cir. 1978).

In *Industrial Union Department, AFL-CIO v. American Petroleum Institute*, 448 U.S. 607 (1980) ("*Benzene*"), the Supreme Court reviewed the judgment of the Fifth Circuit and engaged in a close reading of certain provisions of the OSH Act to

hold that OSHA, before regulating a toxic material or harmful physical agent, must first find that the material or agent poses a "significant risk" to the relevant employees:

> [T]he burden was on the Agency to show, on the basis of substantial evidence, that it is at least more likely than not that long-term exposure to 10 ppm of benzene presents a significant risk of material health impairment.
>
> <em>Benzene</em> at 653.

In arriving at this conclusion, the *Benzene* Court first analyzed Section 3(8) of the OSH Act, 29 U.S.C. § 652(8), which provides the statutory standard for OSHA regulation in the workplace. That provision defines the term "occupational safety and health standard" as:

> a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide *safe* or healthful employment and places of employment.
>
> 29 U.S.C. § 652(8) (emphasis added).

This language, by itself, arguably provides that Congress has given OSHA a broad regulatory mandate to ameliorate any and all unsafe conditions in workplaces under its jurisdiction[2]. The Court addresses this issue by focusing on the word "safe"

---

[2] The OSH Act excludes from its coverage any workplace covered by another federal statute, such as coal, metal, or nonmetal mines covered by the Mine Act. *See* 29 U.S.C. § 653 (b)(1); *See also Sec'y of Labor v. Cranesville Aggregate Cos., Inc.*, 878 F.3d 25, 28 (2d Cir. 2017).

in the phrase "safe employment" and distinguishing it from a "risk-free" working environment in order to find the requirement of a significant risk:

> But "safe" is not the equivalent of "risk-free." There are many activities that we engage in every day -- such as driving a car or even breathing city air -- that entail some risk of accident or material health impairment; nevertheless, few people would consider these activities "unsafe." Similarly, a workplace can hardly be considered "unsafe" unless it threatens the workers with a significant risk of harm.

> Therefore, before he can promulgate any permanent health or safety standard, the Secretary is required to make a threshold finding that a place of employment is unsafe--in the sense that significant risks are present and can be eliminated or lessened by a change in practices.
>
> *Benzene* at 642.

The Court then finds that Section 3(8) is "incorporated by reference into" §6(b)(5) of the OSH Act, 29 U.S.C. § 655(b)(5), which is the provision that expressly authorizes the Secretary to regulate substances such as benzene. *Benzene* at 642. Consequently, OSHA regulations contemplated pursuant to the authority expressed in Section 6(b)(5) must be preceded by a threshold finding that a significant risk to employees is present in the workplace. *Benzene* at 642. The *Benzene* Court notes that other text in the OSH Act and the statute's legislative history support "this interpretation of §§3(8) and 6(b)(5)," namely that Section 3(8) requires a threshold finding of "significant risk" and that Section 3(8) applies to regulations promulgated under Section 6(b)(5). *Benzene* at 643-46.

Throughout its decision, the *Benzene* Court makes it clear that the "significant risk" requirement arises solely from the language of Section 3(8). *See, e.g., Benzene*

at 614-15 (1980) ("We agree with the Fifth Circuit's holding that *§3(8)* requires the Secretary to find, as a threshold matter, that the toxic substance in question poses a significant health risk in the workplace….") (emphasis added); *and Id.* at 639 ("For we think it is clear that *§3(8)* does apply to all permanent standards promulgated under the Act and that it requires the Secretary, before issuing any standard, to determine that it is reasonably necessary and appropriate to remedy a significant risk of material health impairment.") (emphasis added).

### 2. The *Benzene* Case Does Not Apply to the Mine Act and MSHA.

Petitioners argue in their brief that the Mine Act contains substantially identical language to that of the OSH Act upon which the *Benzene* Court grounds its decision. Petitioners' Brief at 14-21. Therefore, they argue that the Mine Act should likewise be read to include the requirement that MSHA find a "significant risk" to workers before it may promulgate health and safety rules. Petitioners' argument fails, in summary, because it misreads *Benzene* as well as the Mine Act.

As an initial matter, the *Benzene* case does not apply to the Mine Act and MSHA because it addressed OSHA regulations only: neither MSHA regulatory action nor the Mine Act itself are implicated in that case. Petitioners argue that because Section 101(a)(6)(A) of the Mine Act is similar to Section 6(b)(5) of the OSH Act, the *Benzene* Case requires this Court to read into the Mine Act the same "significant risk" requirement as the *Benzene* Court read into the OSH Act.

However, a plain reading of both statutes reveals that there are no precise corollaries of the OSH Act's Sections 6(b)(5) and 3(8) present in the Mine Act. Moreover, while OSH Act Section 6(b)(5) and Mine Act Section 101(a)(6)(A) are similar, differing only in the absence of the phrase "to the extent feasible" in the Mine Act, Petitioners' argument misunderstands the precept underlying the *Benzene* Court's interpretation of the OSH Act. The significant risk requirement does not arise from Section 6(b)(5) of the OSH Act, but from the word "safe" in Section 3(8). Only because Section 3(8) is "incorporated by reference", *Benzene* at 642, into Section 6(b)(5) did the Court hold that OSHA is required to find a significant risk before regulating a toxic material or harmful physical agent under Section 6(b)(5).

Moreover, the language in Section 101(a), 30 U.S.C. § 811(a), of the Mine Act corresponding to Section 3(8) of the OSH Act is dissimilar. Whereas the OSH Act directs the Secretary to develop regulations "to provide safe or healthful employment and places of employment," the Mine Act by contrast directs the Secretary more broadly to:

> develop, promulgate, and revise as may be appropriate, improved mandatory health or safety standards *for the protection of life and prevention of injuries in coal or other mines.*
>
> 30 U.S.C. § 811(a)

Because the *Benzene* case's holding requires the exegesis of the language of Section 3(8) of the OSH Act, in particular the word "safe" in the phrase "safe employment," and because the corresponding Section 101(a) of the Mine Act differs

markedly from Section 3(8) of the OSH Act and speaks not of "safe employment" but rather the "protection of life and prevention of injuries," *Benzene* is not controlling and is indeed inapplicable to the Mine Act and to review of regulations promulgated by MSHA, such as the Silica Rule.

### 3. The Text of the Mine Act Does Not Support an Implied "Significant Risk" Requirement.

If the fact that the language of Section 101(a) of the Mine Act differs substantially from Section 3(8) of the OSH Act precludes direct application of the *Benzene* decision sought here by Petitioners, a wider examination of the remainder of the Mine Act conclusively precludes any reading of the Mine Act that imposes upon MSHA the same "significant risk" requirement to which OSHA is subject.

First, in section 101(a) of the Mine Act, the phrase "protection of life and prevention of injuries" itself does not support a requirement that MSHA establish a "significant risk" before regulating a toxic material or harmful physical agent. The word "risk" means the "*possibility* of loss or injury." "Risk," *Merriam Webster Dictionary Online* (https://www.merriam-webster.com/dictionary/risk) (accessed February 4, 2025) (emphasis added). A "significant risk" of harm denotes a likelihood of a given threshold, below which the risk is "insignificant". By contrast, "prevention" does not allow for any harm at all. Therefore, a standard "for the prevention of injuries" is a standard aimed not at reducing the risk of harm to some acceptable threshold, but rather at eliminating the harm entirely.

Other provisions of the Mine Act support the interpretation that the goal of MSHA's health and safety standards is not the creation of "safe employment" through the elimination only of "significant risks" but rather the elimination or prevention of harm to mine workers.  For example, in Section 2(c), Congress declares that:

> there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to *prevent* death and serious physical harm, and in order to *prevent* occupational diseases originating in such mines.
> U.S. Code, 30 U.S.C. § 801(c) (emphasis added).

Here, Congress declares that there is a need to provide effective means and measures to *prevent* death, injury, and occupational disease, and not to lower the likelihood of death, injury, or occupational disease to some acceptable or tolerable rate.  Indeed, the word "prevent" in some form occurs four times in Section 2.  *See* 30 U.S.C. § 801(c) (quoted above); 30 U.S.C. 801(e) (Operators and miners "have the primary responsibility to *prevent* the existence of" unsafe and unhealthful conditions in mines) (emphasis added); and 30 U.S.C. § 801(g) (one purpose of the Mine Act is to improve and expand "research and development and training programs aimed at *preventing* coal or other mine accidents and occupationally caused diseases in the industry") (emphasis added). This should be compared with the corresponding Section 2 of the OSH Act, in which the word "prevent," "preventing," or "prevention" does not appear.

**4. The Eleventh Circuit Correctly Decided That the Mine Act Contains No "Significant Risk" Requirement.**

Petitioners' argument is not novel, as it has been squarely advanced and rejected by the Eleventh Circuit Court of Appeals, which the Petitioners recognize in their brief. *See* Petitioners' Brief at 27-38. In *National Mining Association v. United Steelworkers*, 985 F.3d 1309 (11th Cir. 2021) ("*NMA*") the Eleventh Circuit expressly held that, unlike its OSHA counterpart, the Mine Act does not require MSHA to make a threshold finding of "significant risk" before it may promulgate a final rule. In *NMA*, MSHA promulgated a revised rule related to the timing of mine inspections, *Examinations of Working Places in Metal and Nonmetal Mines.* 82 Fed. Reg. 7680 (2017). Prior to the revised rule, mine inspections were required to be conducted at any time during a work shift. The revised rule required that an examination of working places be conducted at least once per shift before miners begin work, as well as a requirement that operators promptly notify miners in any affected areas of any conditions found that may adversely affect their safety and health and promptly initiate appropriate action to correct such conditions. The revised rule also contained an enhanced recordkeeping requirement.

A petition for review of the final rule was filed by the National Mining Association and other mining associations in the Eleventh Circuit pursuant to 30 U.S.C. § 811(d), which vests jurisdiction over a challenge to mandatory MSHA

health or safety standards in the appropriate United States Court of Appeals. In *NMA*, the petitioners raised several challenges to the rule, the main argument and the most salient for present purposes being the contention that the rule was not issued in accordance with applicable law because MSHA failed to make a predicate finding of significant risk that would be mitigated or eliminated by the final rule.

The argument that petitioners advanced in the Eleventh Circuit is the same argument advanced by Petitioners in the case *sub judice*. That is, that the Mine Act and the OSH Act are analogous statutes and that therefore the *Benzene* Court's interpretation of the language of the OSH Act, requiring the Secretary to make a threshold finding that a place of employment is unsafe should apply in equal measure to the Mine Act. *NMA* at 1315-16.

In *NMA*, the Eleventh Circuit rejected this argument. First, the Court noted that the two statutes have different language: "the Mine Act is concerned with the 'protection of life and prevention of injuries,' and not merely 'safe' workplaces." The Court rejected petitioners' attempt to conflate these differing phrases as both meaning "safe." The Court noted that because Congress used different words "it suggests it intended some materially different standard." *NMA* at 1317.

Second, the Court noted that the Mine Act, as distinct from the OSH Act, does not require MSHA to conduct a cost-benefit analysis before promulgating a regulation nor to establish priorities to ensure that the most serious workplace

hazards are addressed first. *NMA* at 1317-18 (citing *Benzene*, <u>448 U.S. at 644</u> & n. 49)

Third, the Court noted the obvious differences between the workplaces that fall under the aegis of OSHA and mines falling under the aegis of MSHA:

> The *Benzene* opinion emphasized the fact that the OSH Act had a pervasive impact on workplaces all across American industry, whereas the Mine Act affects only workplaces in coal and other mines, which Congress recognized as being especially vulnerable to safety and health risks. And there is evidence in the statute that Congress has made a legislative judgment that mines are inherently unsafe. The statute states that "there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm," <u>30 U.S.C. § 801(c)</u>, while § 801(d) notes that "the existence of unsafe and unhealthful conditions and practices in the Nation's coal or other mines is a serious impediment to the future growth of the coal or other mining industry and cannot be tolerated."
>
> *NMA* at 1318.

In sum, the Eleventh Circuit examined the text of each statute in light of the *Benzene* Court's analysis, and found that the reasoning which led the Supreme Court to find a significant risk requirement in the OSH Act does not support the same finding in the Mine Act.

### 5. Petitioners' Arguments that the Eleventh Circuit Erred in *NMA* fail.

In their brief, Petitioners advance eight residual arguments that the Eleventh Circuit incorrectly held that the Mine Act does not contain a "significant risk" requirement.

Petitioners' first, second, third, and sixth arguments each argue that this Court should disregard the Eleventh Circuit's decision because the Eleventh Circuit in some way failed to consider textual similarities between certain sections of the OSH Act and the Mine Act. *See* Petitioners' Brief at 29-31 (The words "safe," "safety," and "appropriate" are found in Mine Act and the OSH Act); Petitioners' Brief at 31-32 (OSH Act and Mine Act both require economic feasibility analyses); Petitioners Brief at 32-33 (Section 101(a)(6)(B) of the Mine Act is similar to Section 6(g) of the OSH Act); and Petitioners' Brief at 34-37 (Section 101(a) of the Mine Act is similar to Section 6(b)(1) of the OSH Act).

These arguments all fail for the same reason. Each purported similarity or parallel between the Mine Act and the OSH Act cannot overcome the essential difference between the text of Section 3(8) of the OSH Act and Section 101(a) of the Mine Act. It was in the phrase "safe employment" in Section 3(8) of the OSH Act that the *Benzene* Court found the significant risk requirement. Section 101(a) of the Mine Act provides for standards not for "safe employment" but for "protection of life and prevention of injuries," a stronger phrase that permits MSHA, unlike OSHA, to eliminate a harm entirely, not merely a significant risk of harm. *See* above at (Sections 1-2); *See* Respondents' Brief at 27-32. The Eleventh Circuit recognized this when it held that MSHA is not subject to the OSH Act's significant risk requirement. *NMA* at 1315-16.

In their fourth argument, Petitioners argue that this court should not be persuaded by the Eleventh Circuit's holding in *NMA* because the rule at issue in *Benzene* and the rule at issue in *NMA* were of "different" types. Petitioners' Brief at 33. Petitioners argue that the Eleventh Circuit characterized the MSHA rule at issue there as "a modest change to pre-existing standards" that is, the requirement that mine inspections be conducted before and not during a shift.

Petitioners suggest that the reasoning employed by the Eleventh Circuit in *NMA* in finding no "significant risk" predicate in the Mine Act should not apply to regulations that are not "modest" such as here where "MSHA actually is trying to regulate away an (at worst) insignificant risk in the sorptive clays industry." Petitioners' Brief at 33-34. This Court should reject this argument out of hand. The Eleventh Circuit never states that its reasoning only applies to "modest" regulations. The Eleventh Circuit's commentary on this matter is observational and dicta only – it has no bearing whatsoever on the holding in that case.

In their fifth argument, Petitioners argue that this Court should disregard the Eleventh Circuit's decision because it provided an inadequate answer to the constitutional issue of delegation raised by the *Benzene* Court. *See* Petitioners' Brief at 34. Specifically, Petitioners argue that "[*NMA*] gives no explanation why a delegation otherwise unconstitutional would become permissible just because Congress thinks the delegation is good policy….". *Id.* In point of fact, the Eleventh

Circuit did not address the nondelegation doctrine. Out of respect for this Court, the Miner Representatives note that the Respondents in their brief have amply demonstrated that the Mine Act does not present a nondelegation question. Respondents' Brief at 42-45. The Miner Representatives agree with Respondents.

In their seventh argument, Petitioners argue that the facts of this case more closely resemble the facts in the *Benzene* case rather than those in *NMA*, since no toxic materials were implicated in *NMA*. Petitioners' Brief at 36. This argument fails because the applicability of *NMA* relies not on factual similarities between that case and this one, but on the Eleventh Circuit's explicit resolution of a threshold question regarding MSHA's regulatory authority. The Eleventh Circuit held that the Mine Act does not require a finding of significant risk before it may regulate a toxic material or harmful physical agent. Petitioners seek to vacate the Silica Rule on the basis that MSHA is so required. It is Petitioners who implicated the Eleventh Circuit's decision by requesting this Court to split with the Eleventh Circuit on this very issue.

In their eighth and final argument, Petitioners contend that the D.C. Circuit in *Kennecott Greens Creek Mining Co. v. MSHA* ("*Kennecott Greens*"), [476 F.3d 946](D.C. Cir. 2007), "assumed that MSHA *is required* to make significant-risk findings." Petitioners' Brief at 37. This misstates the reasoning of the *Kennecott Greens* decision. The *Kennecott Greens* Court did not address the issue, as it found

that, even if MSHA were subject to the significant risk requirement, it had satisfied

it:

> Thus, before promulgating a health or safety standard under the Mine Act, MSHA must show that the substance being regulated presents a risk of "material impairment of health or functional capacity" for miners who are regularly exposed to the substance. Under the applicable standard, courts extend deference to MSHA's determinations as to which substances present such a risk. In a case involving MSHA's regulation of oxygen levels in mines, we noted that "[a]t most . . . the agency was required to identify a significant risk associated with having no oxygen standard at all." *Nat'l Mining Ass'n v. MSHA*, 116 F.3d 520, 528 (D.C. Cir.1997). Moreover, we emphasized that "the Secretary was entitled to err on the side of overprotection by setting a fully adequate margin of safety." *Id.*
>
> *Kennecott Greens* at 952 (D.C. Cir. 2007).

In this way, the D.C. Circuit took the same path it had ten years earlier in *Nat'l Mining Ass'n v. MSHA*, 116 F.3d 520, 528 (D.C. Cir.1997) ("Even if we were to hold that MSHA was compelled by the statute to identify a significant risk posed by the existing standard, it has done so here.")

Petitioners additionally argue that MSHA had presumed to be subject to the "significant risk" requirement when it promulgated its diesel particulate matter standard in 2001. To the extent it asks the Court to adopt MSHA's previous interpretation of a statute as its own, this argument fails. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("But courts need not and under the [Administrative Procedure Act, 5 U.S.C. §§ 500 et seq.] may not defer to an agency interpretation of the law simply because a statute is ambiguous."). Moreover, to the

extent it suggests that the reason there are no decisions prior to *NMA* that address the question of MSHA and a "significant risk" requirement is that MSHA "took for granted that *Benzene* applies," Petitioners' Brief at 38, it likewise fails. MSHA has long accepted that it is subject to the no-less-protection requirement under Section 101(a)(9)[3]. Despite this, there is a host of cases articulating the requirement, because it forms a basis to challenge the regulation. *See, e.g., Steelworkers v. Mine Safety & Health Admin.*, 925 F.3d 1279 (D.C. Cir. 2019); *Intl. Union, United Mine Workers v. Mine Safety & Health Admin.*, 407 F.3d 1250 (D.C. Cir. 2005); *Nat'l Mining Ass'n v. Mine Safety & Health Admin.*, 116 F.3d 520 (D.C. Cir. 1997). Indeed, Petitioners have it precisely reversed. If it were widely believed that MSHA was subject to the "significant risk" requirement, there would be a host of cases challenging regulations on the basis that MSHA failed to sufficiently articulate and scientifically support the purported significant risk.

For these reasons, Petitioners fail to articulate a compelling reason why this Court should disregard the Eleventh Circuit's decision.

---

[3] Section 101(a)(9), 30 U.S.C. §811(a)(9) reads as follows:

No mandatory health or safety standard promulgated under this subchapter shall reduce the protection afforded miners by an existing mandatory health or safety standard

### 6. Petitioners Seek to Create an Unnecessary Circuit Split

In general, the circuit courts are reluctant to create circuit splits. *See United States v. Games-Perez*, 695 F.3d 1104, 1115 (10th Cir. 2012) ("First and foremost, the circuits have historically been loath to create a split where none exists.") (collecting cases). The Eighth Circuit is no exception. *See Owens v. Miller (In re Miller)*, 276 F.3d 424, 428-29 (8th Cir. 2002) ("we adhere to the policy that a sister circuit's reasoned decision deserves great weight and precedential value. As an appellate court, we strive to maintain uniformity in the law among the circuits, wherever reasoned analysis will allow, thus avoiding unnecessary burdens on the Supreme Court docket."); *See also Ford Motor Credit Co. v. Mierkowski (In re Mierkowski)*, 580 F.3d 740, 743 (8th Cir. 2009).

The Judiciary's interest in maintaining uniformity among the circuit courts is even greater when dealing with review of an administrative agency's promulgation of nationally applicable regulations. Otherwise, an agency may be subject to multiple, potentially incompatible standards of review, leading to forum shopping and leaving any regulation subject to vacatur depending on the circuit court in which a petition for review is filed.

Despite the burdens it would place on MSHA and harm it would work on the Judiciary, Petitioners ask this Court to create a circuit split in order to obtain a judicial exemption for the sorptive clays mining industry.

## IV. CONCLUSION

For the reasons set forth above as well as the reasons set forth in the Respondents' Brief, the Miner Representatives respectfully request that the Petitioners' Petition for Review be denied. The Silica Rule should not be vacated in any part.

In the event the Court grants the Petitioners' Petitions for Review as to any provision in the Silica Rule, the Miner Representatives respectfully request that the Court sever the offending provision, remand it for further consideration, and affirm the remainder of the Silica Rule.

Finally, the Miner Representatives respectfully request that this Court decline to read the Mine Act to require MSHA to establish a "significant risk" before issuing a regulation.

Respectfully Submitted:

*/s/ Kevin F. Fagan*

David Jury
Keren Wheeler
United Steelworkers
Boulevard of the Allies, Rm. 807
Pittsburgh, PA 15222-1209
412-562-2413

*Counsel to* Amicus Curiae
*United Steel, Paper and Forestry,*
*Rubber, Manufacturing, Energy,*
*Allied Industrial, and Service*
*Workers International Union*

Kevin F. Fagan
Hill Pickens
United Mine Workers of America
18354 Quantico Gateway Drive, Ste. 200
Triangle, VA 22172
703-291-2431

*Counsel to* Amici Curiae
*United Mine Workers of America*
*International Union; and National*
*Black Lung Association*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29 and 32 because this brief contains 5,231 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook.

This brief complies with the requirement of 8th Cir. R. 28A(h)(2) because it has been scanned for viruses and is virus-free.

Dated: February 5, 2025

/s/ Kevin F. Fagan
Kevin F. Fagan
*Counsel for* Amici Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Kevin F. Fagan*
Kevin F. Fagan