# In the
# United States Court of Appeals
## for the Eighth Circuit

Sorptive Minerals Institute,

*Petitioner,*

v.

Mine Safety and Health Administration, et al.,

*Respondents.*

**No. 24-2661**

National Stone, Sand, and Gravel Association, et al.,

*Petitioners,*

v.

Mine Safety & Health Review Administration, et al.,

*Respondents.*

**No. 24-2663**

Sorptive Minerals Institute, et al.,

*Petitioners,*

v.

Mine Safety & Health Review Administration, et al.,

*Respondents.*

Petitioners for Review of an Order of the Federal Mine Safety & Health Administration
(89 FR 28218) (MSHA-2023-0001)

**JOINT MOTION FOR LEAVE TO INTERVENE IN APPEAL PROCEEDING TO PARTICIPATE IN ORAL ARGUMENT AND ANY FURTHER BRIEFING FOR UNITED MINE WORKERS OF AMERICA INTERNATIONAL UNION AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL, AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC**

Kevin F. Fagan, General Counsel
Hill Pickens, Staff Attorney
United Mine Workers of America
18354 Quantico Gateway Drive, Suite 200
Triangle, VA 22172
(703) 291-2425

*Counsel to Amicus Curiae United Mine Workers
of America International Union*

David Jury, General Counsel
Keren Wheeler, Associate General Counsel
United Steelworkers
Boulevard of the Allies, Room 807
Pittsburgh, PA 15222-1209
(412) 562-2413

*Counsel to Amicus Curiae United Steel,
Paper and Forestry, Rubber Manufacturing,
Energy, Allied Industrial and Service
Workers International Union, AFL-CIO/CLC*

Pursuant to Federal Rules of Appellate Procedure 15(d), 27, and 34, Proposed Intervenors United Mine Workers of America International Union ("United Mine Workers") and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("United Steelworkers") (collectively, "Unions"), submit this Joint Motion seeking leave to intervene in this administrative review proceeding to participate in oral argument and any supplemental briefing as may be ordered by this Court. On April 10, 2025, Petitioners stated that they object to this Joint Motion. On April 10, 2025, the undersigned spoke to Respondent who indicated that they were still considering their position with respect to this Joint Motion.

In support of this Motion, the Unions state as follows:

## I.    Introduction and Background

On April 18, 2024, the Mine Safety and Health Administration ("MSHA") promulgated a Final Rule entitled "Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection" ("Silica Rule"), 89 Fed. Reg. 28,218 (April 18, 2024).

On April 2, 2025, the National Stone, Sand & Gravel Association, *et al.* filed a Motion for a Stay of the Silica Rule pending judicial review, as well as an Emergency Motion for an Administrative Stay and Expedited Briefing ("Stay

Motions"). On April 4, 2025, this Court granted the Emergency Motion and ordered an expedited briefing schedule on the Motion to Stay.

In its Stay Motions, the Petitioners note that MSHA has been difficult to confer with over even simple scheduling matters, has been unresponsive for large stretches of times, and for months has refused to state its position regarding either an administrative or judicial stay.

Moreover, in recent months there have been significant personnel changes throughout the Department of Labor, and indeed other federal agencies. Additionally, following the inauguration of the new President, MSHA finds itself without permanent senior leadership. Accordingly, significant questions of policy, including whether the Agency will continue to support, rescind, or revise the Silica Rule, may remain undecided for the foreseeable future. However, Respondent's recent filings with this Court portend a tenuous and uncertain future for the Silica Rule and weigh significantly in favor of granting intervenor status to the Unions.

On April 8, 2025, MSHA announced a pause in enforcement of the Silica Rule for a period of four months. *See* https://www.msha.gov/notice-stakeholders. The pause, styled as an act of "enforcement discretion," delays the compliance deadline for coal mine operators until August 18, 2025. Metal and non-metal mines remain subject to the April 8, 2026 compliance deadline.

On April 9, 2025 MSHA filed its "Response to the Petitioners' Motion for Stay" with the Court, stating:

> The Secretary has paused, on her own initiative, enforcement of the Silica Rule for coal operators for four months, until August 18, 2025. See Exhibit A (Notice to Stakeholders). Accordingly, the Secretary takes no position on Petitioners' Motion for Stay. In addition, the Secretary does not object to holding this case in abeyance until the Secretary resumes enforcement on August 18, 2025.
>
> Respondent's Response at 3.

The sudden shift in litigation position signaled by MSHA's "enforcement pause," and by its unilateral proposal to hold this case in abeyance for a period of four months is a clarion call to this nation's miners that the Agency charged with the profound responsibility of protecting their health and safety is losing the stomach for the fight to vindicate its own rule. Given the uncertainty of MSHA's continued defense of the Silica Rule, the Unions seek leave to intervene in the instant administrative review proceeding, based on a good-faith interest in protecting the Silica Rule for the benefit of their members and the nation's miners generally.

## II.  The Unions Have Article III Standing Required to Intervene.

This court has long held that a prospective intervenor must possess Article III standing. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996) ("An Article III case or controversy is one where all parties have standing, and a would-be

intervenor, because he seeks to participate as a party, must have standing as well."). To establish standing, a party must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (internal quotations omitted).

The Unions can establish injury in fact. When a party seeks to intervene in opposition to the relief sought a petitioner, as the Unions do here, this Court has recognized that the injury analysis should presume the petitioner's success. *See Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 973 (8th Cir. 2014). In that case, environmental groups petitioned the EPA to promulgate certain pollution limitations. A power company, Northern States Power ("NSP"), sought to intervene in the case in order to oppose the limitations sought by the environmental groups. In finding that NSP had the Article III standing required to intervene, the Court analyzed the power company's injury by assuming the environmental groups would be successful. *Id*. at 975.

In this case, the Court should likewise presume the Petitioners' success for purposes of analyzing the Unions' injury. If Petitioners are successful and the Silica Rule is vacated or otherwise invalidated, the Unions' members, working miners in mines subject to the Silica Rule, will lose significant workplace protections and

suffer continued exposure to a substantial mining hazard in the form of respirable silica dust. Exposure to respirable silica dust is the leading cause of the increased incidence of serious respiratory illness among miners, including young and early-career miners. See *Brief of* Amici Curiae *American College of Chest Physicians, et al.*, at 8-14. Loss of the protections of the Silica Rule will mean debilitating respiratory illness, including silicosis and coal workers' pneumoconiosis, as well as premature deaths and lifelong disability. This constitutes injury in fact for purposes of establishing Article III standing.

Moreover, when the injury analysis of *National Parks* is applied, the Unions' injury will be caused by the relief sought by the Petitioners. The Petitioners' success in convincing this Court to vacate the Silica Rule will be the direct cause of the Union's members' continued exposure to hazardous respirable silica dust. *See Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 975 (8th Cir. 2014) ("NSP can trace its injury to the EPA through the would-be court order if the Environmental Groups obtain relief.").

Finally, the injury is redressable. If the Unions are successful in defending the validity of the Silica Rule, the injury will be avoided and their members will be free to perform their work and provide for their families without risking debilitating respiratory conditions caused by inhalation of silica dust. *See Nat'l Parks*

*Conservation Ass'n v. EPA*, supra at 975 (8th Cir. 2014) ("Lastly, NSP's injury can be redressed. NSP seeks to prevent the Environmental Groups from obtaining an order imposing [pollution limitations on its power plant]. If NSP prevails, it avoids, or at least delays, the costly technology the Environmental Groups seek.").

### III. The Unions Have Associational Standing to Intervene as the Representatives of Their Members.

The Unions have associational standing to protect the health, safety, and labor rights of their members, who work in mining facilities which would be subject to MSHA's Silica Rule. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 281, (1986) ("It has long been settled that even in the absence of injury to itself, an association may have standing solely as the representative of its members.").

The United Steelworkers is the authorized collective bargaining agent for over 500,000 North American workers, including a majority of the unionized workers in the rubber, chemical, petroleum, paper, metal and mineral mining (other than coal) and general manufacturing industries. The United Steelworkers represents approximately 20,000 miners employed in metal and non-metal mining. The United Mine Workers is the largest union of coal miners in North America, representing tens of thousands of active and retired miners. The United Mine Workers proudly

represents workers in and around underground coal mines, surface mining operations, and preparation plants.

Thousands of union miners who are exposed to silica-related hazards on the job will have their workplace exposures significantly reduced, as long as their employers comply with the workplace protections the regulation mandates. All of these workers will gain protections under the Silica Rule that are necessary for preserving their health, protections that would be jeopardized should the Industry Petitioners prevail in this matter. The working conditions of these members will be directly impacted by the Rule's exposure limit, action limit, workplace examination measures, and revised standards and practices. Petitioners seek an order from this Court vacating the Silica Rule. The Unions' miner members will continue to face the health hazard of workplace respiratory silica exposure if Petitioners are successful, and therefore have a direct stake in the outcome of this litigation.

An association has standing to assert the rights of its members if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Worth v. Jacobson*, 108 F.4th 677, 685 (8th Cir. 2024), citing *Hunt v. Washington State Apple Advert. Comm'n.*, 432 U.S. 333, 343 (1977).

## A. The Unions Have Members Who Would Otherwise Have Standing to Sue in Their Own Right.

The Unions are both not-for-profit associations[1] that are structured as membership organizations, financed by the dues payments of their members. Members directly elect the Unions' leadership and participate in its bodies at local and national levels. Both Unions therefore meet the criteria of a "traditional voluntary membership organization," and may appropriately rely on *Hunt*'s three-part standard for associational standing. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 200 (2023), discussing *Hunt*, supra.

Each putative intervenor Union represents thousands of their miner members who would individually have standing to intervene in defense of the Silica Rule. These individual members of the Unions are within the class of people whom the Silica Rule seeks to protect from the well-established harms of respirated crystalline silica, and their workplace environments are the sites of the regulation's intended effect.

Each putative intervenor has filed simultaneously with this Motion a declaration from an individual member demonstrating that the individual holds

[1] Both are not for profit associations organized under Section 501(c)(5) of the Tax Code.

membership in the Union and would have standing to sue in their own right. *See, e.g.*, *Worth v. Jacobson*, 108 F.4th at 685-87 (finding advocacy organization satisfied associational standing requirement by identifying by name and submitting an affidavit of one member showing that the member would be directly affected by Minnesota legislation).

The United Mine Workers has filed the Declaration of Mr. Bengie Earley, in which Mr. Earley describes his work as an underground coal miner, his union membership, and his activity as the chairman of his local union's safety committee. Mr. Earley, as an underground miner in a longwall mining operation, is exposed to coal and silica dust in the course of his work day. Mr. Earley and his fellow underground coal miners would be beneficiaries of the Silica Rule, as they would be exposed to much reduced levels of silica dust. Vacatur of the Silica Rule would deprive Mr. Earley and his fellow underground coal miners of the protections the rule promises and would require them to continue to respirate silica dust each day for the foreseeable future.

The United Steelworkers has filed the Declaration of Mr. Marshal Cummings, in which Mr. Cummings describes his union membership and activity and his workplace conditions. Mr. Cummings, the elected President of his United Steelworkers Local Union and a long-time safety advocate, faces the hazard of

exposure to respiratory silica in his workplace, a Wyoming trona mine. The vacatur of the Silica Rule sought by Petitioners in this case will result in depriving Cummings and his fellow miners of the benefits of reduced silica exposure, and would require them to continue to respirate this material at hazardous levels for an indefinite period until it can be properly regulated.

The Earley and Cummings declarations sufficiently allege that they are directly subject to the effects of the Silica Rule, which the Unions seek to preserve on behalf of their members. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (requiring that associations make "specific allegations establishing that at least one identified member had suffered or would suffer harm"); *Ctr. for Biological Diversity v. Strommen*, 114 F.4th 939, 943 (8th Cir. 2024) (granting association's motion to supplement the record on standing "naming three members who regularly travel to northern Minnesota to see lynx").

### B. The Unions Seek To Protect Interests Germane to Their Purpose

The interests the putative intervenors seek to protect here are directly germane to the Unions' core purposes of representing their miner members and protecting their health and safety. The Unions have long been committed to the health and safety of their members, advocating at workplaces nationwide and in the state and federal legislative arena for adequate protections for miners. The Unions are

dedicated to protecting and maintaining safe working conditions for individual members. The Unions have specifically advocated for MSHA to promulgate a standard limiting miner exposure to respirable silica. In 2023, the Unions submitted comments supporting the strengthening and adoption of the Silica Rule during the rulemaking process. *See* United Steelworkers Comment at https://www.regulations.gov/comment/MSHA-2023-0001-1447; United Mine Workers Comment at https://www.regulations.gov/comment/MSHA-2023-0001-1398.

### C. Individual Participation by the Unions' Members is Not Required.

The third factor of the *Hunt* test further supports the Unions' standing in this matter, because litigation of the Petitioners' challenge to the Silica Rule does not require individual participation by the Unions' members. The resolution of Petitioners' suit does not require this Court "to consider the individual circumstances of any aggrieved…member." *UAW v. Brock*, 477 U.S. at 287. Petitioners' request for vacatur of the Silica Rule, and MSHA's responses to date, do not rest on particular applications of the regulation, and instead raise "pure questions of law" that can be resolved without reference to any individual miner. *Id.*

## IV.    The Unions Have a Right to Intervene in this Proceeding Pursuant to Federal Rule of Appellate Procedure 15(d)

The United Steelworkers and United Mine Workers seek to intervene in the instant proceeding pursuant to Federal Rule of Appellate Procedure 15(d), which provides for intervention in cases involving review of agency actions, through the Court's application of Federal Rule of Civil Procedure 24(a).  While Rule 15(d) does not set forth specific standards for resolving questions of intervention in appellate proceedings, the Supreme Court has recognized that "the policies underlying intervention [in the district courts] may be applicable in appellate courts." *Autoworkers Local 283 v. Scofield*, 382 U.S. 205, 216 n.10 (1965).  "Rule 15(d) of the Federal Rules of Appellate Procedure governs interventions in administrative appeals such as this one. That rule provides no standard for resolving intervention questions, but the Court has identified two considerations: first, the statutory design of the act and second, the policies underlying intervention in the trial courts pursuant to Fed. R. Civ. P. 24." *Texas v. U.S. Dept. of Energy*, 754 F.2d 550, 551 (5th Cir. 1985) (*citing Scofield*, 382 U.S. at 217 n.10);  *see also Sierra Club, Inc. v. E.P.A.*, 358 F.3d 516, 517-18 (7th Cir. 2004) (*citing Scofield*, 382 U.S. at 216–17 & 217 n.10 and *Texas v. U.S. Dept. of Energy*, supra at 551) (stating, "Rule 15(d) does not provide standards for intervention, so appellate courts have turned to the rules governing intervention in the district courts under Fed. R. Civ. P. 24").

In this Court, a party may intervene as a matter of right in accordance with Federal Rule of Civil Procedure 24(a)(2)[2] ("Rule 24(a)(2)") if the movant establishes that: "(1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties." *S. Dakota v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). Additionally, the motion to intervene must be timely. *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2012) ("The issue of the timeliness of a motion to intervene is a threshold issue.")

Finally, the rule for intervention as a matter of right has been liberally construed in this Court for the benefit of a proposed intervenor, and any doubts are to be resolved in the proposed intervenor's favor. *See Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992).

---

[2] Federal Rule of Civil Procedure 24(a)(2) provides that:

> On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

## A. The Unions' Motion is Timely under Rule 24(a)(2)

This Court examines the timeliness of a motion to intervene pursuant to four factors: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. *Minn. Milk Producers Ass'n v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998) (quoting *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995)).

Regarding the first factor, all briefs have not been filed and oral argument has not yet been scheduled. Additionally, the Unions seek to intervene for purposes of participating in oral argument and any additional briefing that may be directed by the Court. Accordingly, intervention by the Unions at this stage in the litigation would not interfere with any scheduled briefing.

Regarding the second and third factors, while the Unions have had knowledge of the litigation since its inception, they had no reason to believe that MSHA would not adequately represent their interest in defending the Silica Rule until they became aware of MSHA's four-month enforcement pause. Indeed, as recently as January 29, 2025, MSHA filed a compelling and thoughtful brief in support of the validity of the Silica Rule, which the Unions supported in their previously filed brief as *amici*

*curiae*. Accordingly, the Unions were not on notice that their interests were not adequately represented until after April 8, 2025, when MSHA issued its pause of enforcement.

In *Cameron v. EMW Women's Surgical Ctr.*, the Supreme Court held that "[t]imeliness is to be determined from all the circumstances," and "the point to which [a] suit has progressed is ... not solely dispositive." 595 U.S. 267, 279 (2022). The "most important circumstance relating to timeliness" is that a putative party seeks to intervene "as soon as it [becomes] clear that [its] interests would no longer be protected by the parties in the case." *Id.*, citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977). Where the "need to seek intervention did not arise until [a government party] ceased defending the [law] . . . the timeliness of [the] motion should be assessed in relation to that point in time." *Id.* at 280. *See also United Food & Com. Workers Union, Loc. No. 663 v. USDA*, 36 F.4th 777, 781 (8th Cir. 2022) (citing the timeliness of intervention in *Cameron,* where "the Secretary adequately protected Kentucky's interests and thus the Kentucky Attorney General's decision not to intervene earlier was justified" and finding intervention untimely where, by contrast, the putative intervenors knew for eight months that no party was protecting their interest and failed to intervene).

Here, the Unions became aware that MSHA was no longer representing the interests that the Unions seek to protect on April 8, 2025 when MSHA publicized its Notice to Stakeholders announcing its temporary pause. The agency's change in position was confirmed on April 9, 2025, when MSHA filed its Response to Petitioners' Motion for Stay, which failed to oppose Petitioners' Motion for Stay and proposed for the first time holding this litigation in abeyance.

Therefore, April 8, 2025 is the first day that the Unions could have had notice that their interests were no longer fully represented in the instant litigation. This Motion to Intervene comes less than a week after that notice and is timely.

Finally, regarding the fourth timeliness factor, neither Petitioners nor MSHA will be prejudiced by the Unions' intervention at this juncture. The Unions are not requesting any actions that would delay the proceedings, and only seek to participate in the oral argument and in any supplemental briefing that the Court may order. The United Steelworkers and United Mine Workers also agree to abide by any decisions of the Court as to the scheduling of the oral argument and of any additional proceedings.

Accordingly, taken together, the four factors militate in support of the timeliness of the Union's Motion.

In the alternative, should the Court find this motion to be untimely, it should nevertheless grant this motion out of time under its authority to "permit an act to be done after [the time prescribed under the Federal Rules] expires." Fed. R. App. P. 26(b); *see also United Gas Pipe Line*, 824 F.2d 417, 436 n. 22 (5th Cir. 1987) (adverting to Court's "practice at times to grant motions for leave to intervene out of time"); *Int'l Union of Operating Engineers, Loc. 18 v. NLRB*, 837 F.3d 593, 595 (6th Cir. 2016) (Rule 15(d) "is a claims-processing rule that does not affect our subject matter jurisdiction").

## B. The Unions Have a Recognized Interest in the Subject Matter of the Litigation

The Unions have a strong, demonstrable interest in ensuring that the critical protections to miner safety set forth in the Silica Rule, which are at issue in this appeal, take and remain in effect. The United Steelworkers and United Mine Workers are labor unions that have expended considerable resources to advocate for a national silica standard in coal and metal and nonmetal mines in furtherance of the health and safety interests of their members, who are miners covered by the Mine Act and who will be negatively impacted if the Silica Rule is stayed or vacated.

The health and safety interests that the United Steelworkers and United Mine Workers seek to protect here clearly are germane to their purposes as labor unions devoted to the betterment of their members' working conditions. The Unions have

long advocated for MSHA to promulgate a standard limiting miner exposure to respirable silica. In 2023, the Unions submitted comments supporting the strengthening and adoption of the MSHA Proposed Rule Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection. *See* United Steelworkers Comment at https://www.regulations.gov/comment/MSHA-2023-0001-1447; United Mine Workers Comment at https://www.regulations.gov/comment/MSHA-2023-0001-1398. When the Final Rule issued in April 2024, the Unions advocated for the swift application of the new standard to mines and employers within MSHA's jurisdiction for the benefit of the miners represented by the Unions.

As previously detailed in this Motion, the United Mine Workers represents thousands of coal miners working in mines subject to the silica rule, and its members as well as other coal miners have suffered increasing rates of silicosis and coal workers pneumoconiosis in large part due to the exposure to respirable silica the Silica Rule was promulgated to prevent. Likewise, the United Steelworkers represents thousands of miners in metal and nonmetal mines subject to the Silica Rule. These miners are daily impacted by the presence of deadly silica dust in their respective workplaces. The implementation, stay, or vacatur of the Silica Rule would

have a direct impact on the health, safety and lifespan of the Unions' members. (Cummings Decl.; Earley Decl.).

### C. The Unions' Interest Might be Impaired by the Outcome of this Case

If the Court invalidates the Silica Rule, the Unions' members working in the mines and exposed to silica dust will be directly and negatively impacted by the return to the less-protective silica dust standard that has permitted the rise in silicosis rates among even relatively young miners. *See Brief of* Amici Curiae *American College of Chest Physicians, et al.*, *supra* at 8-14. Accordingly, there is no question that members of the United Steelworkers and United Mine Workers have a substantial interest in the outcome of this case because these members are exposed on a daily basis to the hazards that are addressed by MSHA's Silica Rule.

### D. None of the Existing Parties Adequately Represents the Unions' Interest in this Litigation

The Supreme Court has held that a successful intervenor need only show that its interest in the action may be inadequately represented by the existing parties to the suit and that "the burden of making that showing should be treated as minimal." *Trbovich v. Mine Workers*, 404 U.S. 528, 538 n. 10 (1972). Even when an existing party may currently seek the same outcome as a proposed intervenor, Courts will still allow intervention where the particular interests of the intervenor may not be

adequately represented by the existing party. *Berger v. N.C. Conf. of NAACP*, 597 U.S. 179, 181 (2022), *citing Trbovich, supra* (noting that the presumption applies only when interests fully overlap).

In the instant proceeding, it is now unclear whether MSHA will continue to defend the Silica Rule in future briefings. MSHA's recent administrative act of selective enforcement and the agency's court filings related to Petitioners' request for a stay of the Silica Rule demonstrate a litigation stance inimical to the Unions' position that enforcement of the Silica Rule must commence forthwith in order to protect workers.

The Unions seek to have the workplaces of their members come into compliance with the Silica Rule, and are not supportive of delays in the enforcement of the rule or the defense of challenges to the rule. The April 8 temporary pause, therefore, indicated a conflict with the Unions' position with respect to this rule. The Unions oppose a stay by this Court of the Silica Rule, because of the silica exposure harm that a stay would cause to their members. MSHA's failure to oppose a stay of the rule on the merits is directly opposed to the Unions' interests. MSHA's position in response to the stay request further demonstrated that as this litigation proceeds, MSHA is likely to take positions adverse to or significantly different from the Unions'.

In addition, the change in Administration and current lack of an Assistant Secretary of Labor for Mine Safety and Health create serious doubts that MSHA will vigorously or adequately represent the interests of the United Steelworkers and United Mine Workers before this Court.

Accordingly, because the Motion is timely, and because the Unions can establish a recognized interest in the subject matter of this litigation that might be impaired by the outcome and which may not be adequately represented by an existing party, the Unions are entitled to intervention as a matter of right.

## V.  Alternatively, the Court should Grant Permissive Intervention under Rule 24(b)(2)

If the Court determines that the Unions are not entitled to intervention under Rule 24(a)(2), the Unions then respectfully request, in the alternative, that the Court grant intervention in this proceeding pursuant to Federal Rule of Civil Procedure 24(b)(1) ("Rule 24(b)(1)"), which permits intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(1). Further, the Rule provides that in exercising its discretion, "the court shall consider whether the intervention will delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). This Court has emphasized that the "principal consideration" in determining whether to grant permissive intervention is "whether the proposed intervention would unduly delay or prejudice

the adjudication of the parties' rights." *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 923 (8th Cir. 2015).

First, the Unions' claim or defense and the main action have a question of law or fact in common. The Unions seek to defend the Silica Rule's validity in light of the challenges raised by the Petitioners and industry *amici* in these consolidated cases. The Unions' contention that the Silica Rule was validly promulgated and should not be vacated shares significant common questions of law or fact if not indeed identity with the main action.

Second, as discussed above, no party would be prejudiced by the Unions' intervention, nor would the proceedings be delayed.

Accordingly, even if the Unions are found not to have a right to intervene under Rule 24(a)(2), the Court should grant the Unions permissive intervention under Rule 24(b)(1).

## VI.  Conclusion

For the reasons stated herein and for good cause shown, the United Mine Workers and United Steelworkers respectfully request that this Court grant this Joint Motion to allow the Unions to intervene in this litigation for the purpose of participating in oral argument and any supplemental briefing that the Court may order.

Respectfully submitted:

/s/ Kevin F. Fagan

David Jury
Keren Wheeler
United Steelworkers
Boulevard of the Allies, Rm. 807
Pittsburgh, PA 15222-1209
412-562-2413
*Counsel to Proposed Intervenor*
*United Steel, Paper and Forestry*
*Rubber, Manufacturing, Energy,*
*Allied Industrial, and Service*
*Workers International Union,*
*AFL-CIO/CLC*

Kevin F. Fagan
Hill Pickens
United Mine Workers of America
18354 Quantico Gateway Dr., Suite 200
Triangle, VA 22172
703-291-2431
*Counsel to Proposed Intervenor*
*United Mine Workers of America*
*International Union*

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Motion complies with Fed. R. App. P. 27(a) and the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 4,861 words.

The undersigned further certifies that this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally-spaced typeface using Microsoft Word Version 2016 in Times New Roman 14 point font.

Dated:   April 14, 2025

*/s/ Kevin Fagan*
Kevin Fagan

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion was served on Appellees on April 14, 2025, by using the Court's CM/ECF electronic filing system, which will send notice to counsel of record:

Aaron R. Gelb
Kathryn M. McMahon
Mark M. Trapp
CONN & MACIEL

Emma Cusumano
Jennifer A. Ledig
Brad J. Mantel
Marcus David Reed
Matthew Ward
Office of the Solicitor

Keith Bradley
Peter S. Gould
Trevor Pirouz Kehrer
Kayla Marie Mendez
Morgan Alexis Miller
SQUIRE & PATTON

In the United States Court of Appeals
for the Eighth Circuit

| | | |
|---|---|---|
| SORPTIVE MINERALS INSTITUTE, et al | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | **Nos. 24-1889, 24-2663** |
| MINE SAFETY AND HEALTH ADMINISTRATION, AND JULIE SU, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) ) ) | |
| Respondents. | ) | |

## DECLARATION OF BENGIE EARLEY

I, Bengie Earley, hereby declare under penalty of perjury as follows:

1. I have been employed as a coal miner at Warrior Met Coal Mining, LLC ("Warrior Met"), since 2015. Warrior Met operates two underground mines, the Number 4 and Number 7 mines, located in Brookwood, Alabama.

2. Prior to working at Warrior Met, I worked at Peabody Southeast Mining's Shoal Creek Mine ("Shoal Creek"), an underground mine located in Jasper, Alabama. I worked at Shoal Creek for approximately 11 years.

3. Warrior Met employs approximately 400 coal miners at its Brookwood facilities who are represented by the United Mine Workers of America ("UMWA").

1

4. My job classification is "inside laborer." As an inside laborer, my job duties include operating and maintaining mine tools and equipment, ensuring site safety and cleanliness, and general physical labor to assist in the extraction of coal.

5. I am a member of UMWA Local Union 2397. I am also Chairman of the UMWA Safety Committee at Warrior Met's Number 7 Mine.

6. As Chairman of the Safety Committee, one of my duties is to conduct safety tours or "walkarounds" of the mine to ensure that the mine is being operated in accordance with all applicable safety and health regulations.

7. The Number 7 Mine is a longwall operation. Longwall systems of mining use a shearer that rises on a conveyor system and cuts coal at the mine face. The cut coal is crushed and then transported via conveyor belt out of the mine itself. The longwall method of mining liberates coal dust, as well as silica dust, from the coal and rock that is sheared by the longwall mining system. As a result of this method of mining, I and other underground miners are regularly exposed to respirable silica dust.

8. As an underground coal miner and as Chairman of the UMWA Safety Committee, I have firsthand knowledge of fellow coal miners who have suffered work-related respirable disease and illness.

9. I am aware that in April 2024, MSHA promulgated what is known as the silica rule, which limits the amount of silica dust that workers may be exposed to. Based on my years of working in an underground coal mine and my work on the UMWA Safety Committee, I am aware that silica dust causes respirable disease and illness.

10. I am further aware that the compliance date for the silica rule is April 14, 2025. As a coal miner and a representative of my fellow workers, I believe that the

silica rule is essential for protecting the lives and health of the nation's coal miners.

11. I further believe that any delay in the implementation and enforcement of the silica rule will adversely affect me and my fellow workers who are employed in the mining industry as underground coal miners.

Dated: April 11, 2025

Bengie Earley
1542 Sunrise Road
Jasper, AL 35504
205-388-4540
coalminer0268@gmail.com

In the United States Court of Appeals
for the Eighth Circuit

| | | |
|---|---|---|
| SORPTIVE MINERALS INSTITUTE, et al | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | **Nos. 24-1889, 24-2663** |
| MINE SAFETY AND HEALTH ADMINISTRATION, AND JULIE SU, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) ) ) | |
| Respondents. | ) | |

**DECLARATION OF MARSHAL CUMMINGS**

I, Marshal Cummings, declare as follows:

1.      My name is Marshal Cummings. I am a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO (USW) and USW Local 13214.

2.      I am employed as a Stores Operator at WE Soda in Green River, Wyoming, which is in the Southwest part of the state. This facility consists of an

underground trona mine, a solution mine, and several surface refining plants that process the trona ore into soda ash and other specialty products.

3.     I have worked in trona mining for nineteen years. My first day of work in a trona mine was five days before my high school graduation. I've worked at my current employer for fifteen years in both underground and surface operations. I've worked in a coal fired powerhouse that supplies steam to various plants as well as generating electricity for twelve years before I transferred to a day shift job.

4.     My workplace has more roadway underground than downtown San Francisco. Personnel and equipment enter the mine via a hoist that descends 1,650 feet to the mine. Open four-wheeled vehicles provide transportation throughout the mine. Borer Miners and Drum Miners set up panels for our longwall to extract the ore at a faster and more efficient pace. The ore then rides miles of beltways to two ore hoists, where it is hoisted to the surface to be refined.

5.     As an active member of the USW, I pay membership dues every pay period which partly fund the USW International and partly fund my USW Local. I am currently President of USW Local 13214, a position to which I was elected by

my fellow members of the Local, who are also my co-workers at the mine where I am employed.

6.      I have long held positions with my USW Local Union and participate in USW elections and membership activities. I have been a Chief Steward, a safety committeeman, and I serve as a miner's representative for inspections. In 2023, my Local Union funded my completion of a "Train the Trainer" course conducted by the Mine Safety Health Administration. In these positions I advocate for miner safety, including for measures that reduce silica exposure, by monitoring the workplace, educating my co-workers and company management, communicating with safety agencies, and when necessary, filing grievances. In 2023, I gave testimony on behalf of my fellow workers and the USW in favor of MSHA's rulemaking to reduce the silica exposure limit. The rulemaking resulted in the issuance of MSHA's Silica Rule.

7.      I and my fellow workers face silica exposure in our workplace. Coal dust, which inherently contains respirable crystalline silica, is prevalent in the powerhouse environment where I worked as well as underground. Crystalline silica is present in the top rock, the bottom rock, as well as the "the bands" in the Trona Seam. I have personally been exposed to high levels of silica. The first time I

became aware of this exposure was while working underground cleaning belt spillage on a scoop in 2011. In my powerhouse career, exposure to coal dust is a safety hazard that I face every day. Based on a recent study, my co-workers and I learned that silica levels in the powerhouse are at times as high as 150 micrograms per cubic meter – three times the exposure limit permitted by the Silica Rule.

8.      We would benefit from the implementation and enforcement of the exposure limits in the U.S. Department of Labor Mine Safety and Health Administration's Final Rule entitled "Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection" ("the Silica Rule"). The Silica Rule, combined with proper MSHA enforcement, would reduce respiratory exposure to silica at my workplace. My co-workers and I will directly benefit from the Silica Rule's lower permissible exposure limit, establishment of an action level, medical surveillance provisions, and updated practices for respiratory protection, because the current exposure limits and compliance mechanisms are inadequate to protect our health.

9.      If the Rule for which I advocated is vacated, my co-workers and I will be deprived of the benefits of reduced exposure. Because of the carcinogenic nature of silica dust and its deadly effects, I believe that the outcome of litigation

that could halt the rule's implementation has the potential to significantly affect my

health and even my life expectancy.

    10.    I declare under penalty of perjury that the foregoing is true and

correct. Executed on April 14, 2025.


                        Respectfully submitted,

                        /s/ Marshal Cummings
                        Marshal Cummings

                        April 14, 2025