## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

Sorptive Minerals Institute,

       Petitioner

    *v.*

Mine Safety and Health
Administration; Secretary of
Labor, United States Department
of Labor,

       Respondents

-----

National Stone, Sand & Gravel
Association, et al.,

       Petitioner

    *v.*

Mine Safety and Health
Administration, et al.

       Respondents

No. 24-1889

No. 24-2661

Sorptive Minerals Institute and
Blue Mountain Production
Company,

        Petitioners

    *v.*

Mine Safety & Health
Administration, et al.

        Respondents

No. 24-2663

**Secretary's Response to
American Thoracic Society's
Motion for Leave to Intervene**

    This case is a challenge to the Mine Safety and Health Administration ("MSHA") final rule entitled "Lowering Miners' Exposure to Respirable Crystalline Silica and Improving Respiratory Protection," 89 Fed. Reg. 28,218 (Apr. 18, 2024) ("Silica Rule"). The Silica Rule became effective on June 17, 2024. The compliance date for the coal industry was April 14, 2025. The compliance date for the metal/nonmetal industry is next year, April 8, 2026.

    The first challenge to the Silica Rule was filed in this Court by Petitioner Sorptive Minerals Institute on April 29, 2024. Another challenge was filed in

the Fifth Circuit. After extensive motion practice, the cases were consolidated in this Court on August 16, 2024. The parties have filed opening and response briefs in this case, and the only remaining briefs are Petitioners' reply briefs.

On April 4, 2025, the Court granted Petitioners' emergency motion for a temporary administrative stay of the Silica Rule. Order, ECF No. 5503639 (8th Cir. Apr. 4, 2025); Petitioners' Emergency Motion for Administrative Stay and Expedited Briefing, ECF No. 5502801 (8th Cir. Apr. 2, 2025). On April 11, 2025, the Court granted Petitioners' motion to stay the compliance deadlines until the Court completes a substantive review of the petition for review. Order, ECF No. 5505588 (8th Cir. Apr. 11, 2025); Petitioners' Motion for Stay Pending Judicial Review, ECF No. 5502800 (8th Cir. Apr. 2, 2025). Also on April 11, 2025, the Court granted Petitioners' motion to hold the appeals in abeyance and directed the parties to file a joint status report by June 10, 2025, regarding the developments in the cases. Order, ECF No. 5505588 (8th Cir. Apr. 11, 2025); Petitioners' Motion for Four-Month Abeyance of Litigation, ECF No. 5505429 (8th Cir. Apr. 11, 2025).

On April 14, 2025, the American Thoracic Society ("ATS") filed a motion for leave to intervene ("ATS Motion to Intervene"). Motion for

Leave to Intervene to Participate in Further Briefing and in Oral Argument of American Thoracic Society, ECF No. 5506393 (8th Cir. Apr. 14, 2025).

ATS's Motion to Intervene should be denied because the motion is untimely. ATS's Motion to Intervene should also be denied because ATS has not rebutted the presumption that the Secretary is adequately representing the public interest in this case. Finally, ATS's Motion to Intervene should be denied because they have not established Article III standing.

## I. ATS's Motion to Intervene Is Untimely

ATS seeks to intervene as a matter of right under Federal Rule of Appellate Procedure 15(d) ("FRAP 15(d)") and Federal Rule of Civil Procedure 24(a)(2) ("FRCP 24(a)(2)"). ATS Motion to Intervene at 12. ATS also seeks permissive intervention pursuant to FRCP 24(b)(2). "The issue of timeliness of a motion to intervene is a threshold issue." *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010). Under either theory of intervention—as of right or permissive—ATS's request is untimely and does not meet this threshold issue.

### A. ATS's Motion to Intervene as a Matter of Right Is Untimely Under Both FRAP 15(d) and FRCP 24(a)(2)

FRAP 15(d) provides that a motion to intervene "must be filed within 30 days after the petition for review is filed…" FRAP Rule 15(d). In the

Seventh Circuit, there is "no authority to create an exception to [the] clearly worded jurisdictional rule" requiring motions to intervene to be filed "within 30 days after the filing of the petition for review." *Miljkovic v. Ashcroft*, 366 F.3d 580, 583 (7th Cir. 2004). [1]

The initial lawsuit challenging the Silica Rule in this case was filed in this Court on April 29, 2024. ATS filed its motion to intervene one year later, on April 14, 2025. On this basis alone, ATS's motion to intervene as a matter of right is untimely and should be dismissed. Indeed, ATS does not even acknowledge the applicable 30-day filing deadline, let alone provide grounds for excusing ATS's extreme tardiness.

Because FRAP 15(d) provides the requisite timeframe for filing a motion to intervene in an agency review proceeding, ATS errs in asserting that FRCP 24(a)(2)'s timeliness standard, which applies to motions to intervene in district court proceedings, is relevant. Nonetheless, even if FRCP 24(a)(2)'s timeliness standard were applicable, ATS's motion to intervene,

---

[1] The Secretary notes, however, that at least one other circuit has held that the 30-day deadline is not jurisdictional. *Int'l Union of Operating Eng'rs, Loc. 18 v. NLRB*, 837 F.3d 593, 596 (6th Cir. 2016) ("this thirty-day filing deadline is a claim-processing rule that the courts of appeals can excuse").

made one year after the initial Silica Rule challenge and when briefing on the merits is nearly complete, would not be "timely." When determining timeliness under FRCP 24(a)(2), courts consider the following factors: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. *Planned Parenthood of the Heartland v. Heineman*, 664 F.3d 716, 718 (8th Cir. 2011) (citing *Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011). When considering all of these factors in this case, ATS's motion to intervene is untimely under the FRCP 24(a)(2) standard.

### 1. The Extent the Litigation Has Progressed at the Time of the Motion to Intervene

Intervention in the late stages of litigation is disfavored by this Court. *Craig v. Simon*, 980 F.3d 614, 618 n.3 (8th Cir. 2020) (denying as untimely a motion to intervene on appeal because it was "filed after expedited briefing was completed" and noting Fifth Circuit precedent stating that "intervention on appeal should be allowed only 'in an exceptional case for imperative reasons'") (quoting *Richardson v. Flores*, 979 F.3d 1102, 1103–06 (5th Cir. Nov. 12, 2020)). This Court has denied a motion to intervene filed

12 days after commencement of an action where a hearing already had been held and a temporary restraining order issued. *Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985).

In this case, the first challenge to the Silica Rule was filed in this Court on April 29, 2024. Petition for Review by Sorptive Minerals Institute, ECF No. 5388294 (8th Cir. Apr. 29, 2024). The second challenge to the Silica Rule was filed in the Fifth Circuit on June 14, 2024. Petition for Review by National Stone Sand and Gravel Association, et. al., ECF No. 1-2, No. 24-60306 (5th Cir. June 14, 2024). After considerable motion practice, these challenges were consolidated in this Court on August 16, 2024. Order, ECF No. 5425428 (8th Cir. Aug. 16, 2024).

After consolidation in this Court, the  parties filed their primary briefs. Opening Brief of Petitioners Sorptive Minerals Institute and Blue Mountain Production Company, ECF No. 5459828 (8th Cir. Nov. 22, 2024); Proof Opening Brief for Petitioners National Stone, Sand and Gravel Association, et. al., ECF No. 5459824 (8th Cir. Nov. 22, 2024); Proof Response Brief of Respondent Secretary of Labor, ECF No. 5476148 (8th Cir. Jan. 17, 2025).

In addition to these briefs, four *amicus curiae* briefs were filed, including one filed by ATS. Amici Curiae Brief of American College of Chest Physicians, American Lung Association, American Thoracic Society, and Association of Occupational and Environmental Clinics, ECF No. 5487078 (8th Cir. Feb. 19, 2025). Additionally, the United Mine Workers of America International Union, as well as the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union filed a brief in support of the Secretary. Amici Curiae Brief of United Mine Workers of America International Union; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFLCIO/CLC; and the National Black Lung Association, ECF No. 5487074 (8th Cir. Feb. 19, 2025).

This case is nearing its end. The case is fully briefed with the exception of the Petitioners' reply briefs. Were it not for Petitioners' Emergency Motion for Stay, the Petitioners would have filed their reply brief as scheduled on April 21, 2025, and the Court might very well have scheduled oral argument already. And yet, at the eleventh hour of this litigation, ATS seeks to intervene after the parties have filed their primary briefs, after four *amicus curiae* briefs have been filed (including an amicus brief by ATS), and after the

Court issued a temporary administrative stay. This is too late, and this factor weighs against granting ATS intervenor status.

## 2. The Prospective Intervenor's Knowledge of the Litigation

Where a party seeks to intervene in a case, extended delay in doing so militates against allowing the intervention. See *Minn. Milk Producers Ass'n v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998) (district court's denial of motion to intervene upheld where intervenors sought to intervene at the latest opportunity); *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995) (district court's denial of motion to intervene upheld when Intervenor monitored suit for two years and moved to join one month before trial and after a settlement was reached).

ATS concedes that "it had knowledge of [this] litigation." ATS Motion to Intervene at 18. Indeed, ATS filed an amicus brief. Amici Curiae Brief of American College of Chest Physicians, American Lung Association, American Thoracic Society, and Association of Occupational and Environmental Clinics, ECF No. 5487078 (8th Cir. Feb. 19, 2025). ATS has had ample opportunity to intervene in the last twelve months, but it chose not to. Under the circumstances, this factor militates against granting ATS intervenor status.

### 3. The Reason for the Delay in Seeking Intervention

FRCP 24(a)(2) also provides for a party to intervene where it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, *unless existing parties adequately represent that interest.*" FRCP 24(a)(2) (emphasis added). In matters concerning the public interest, the government is presumed to represent the interests of a movant. *Chiglo v. City of Preston*, 104 F.3d 185, 187-88 (8th Cir. 1997).

A party seeking to intervene in litigation under FRCP 24(a) must show that none of the existing parties adequately represents its interests. *North Dakota ex rel. Stenehjem v. U.S.*, 787 F.3d 918, 921 (8th Cir. 2015). This is usually a minimal burden, but

> when one of the parties is an arm or agency of the government, and the case concerns a matter of sovereign interest, the bar is raised, because in such cases the government is presumed to represent the interests of all its citizens.

*Id.* (quoting *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)). "The government represents the interests of a movant 'to the extent his interests coincide with the public interest.'" *Chiglo*, 104 F.3d at 187-88. This presumption of adequate representation by the government can be overcome

only by "a strong showing of inadequate representation." *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004). The presumption may be rebutted by showing that the government has "committed misfeasance or nonfeasance in protecting the public." *Stenehjem*, 787 F.3d at 922(quoting *Chiglo*, 104 F.3d at 188). However, "[a]bsent this sort of clear dereliction of duty … the proposed intervenor cannot rebut the presumption of representation by merely disagreeing with the litigation strategy or objectives of the party representing him." *Ibid.* (quoting *Chiglo*, 104 F.3d at 188).

Here, ATS's proffered reason for its delay in moving to intervene at this advanced stage of the litigation is its belief that the Secretary's "enforcement pause" on April 8, 2025, of the coal compliance date indicates that "no party will adequately represent" ATS's interests. ATS Motion to Intervene at 15. ATS's belief is unfounded, and it reads far too much into the present procedural posture of the case and the Secretary's temporary, four-month enforcement pause of the coal compliance date.ATS complains only of the Secretary's short, four-month enforcement pause in the coal compliance date. ATS Motion to Intervene at 17.

ATS also complains that the Secretary "did not oppose" Petitioners motion for stay of the rule, yet ignores that only a week earlier, the Court granted a temporary administrative stay without awaiting the Secretary's response to Petitioners' Emergency Motion for Stay. ATS Motion to Intervene at 17. Parties, including the Secretary, take litigating positions for any number of reasons, which are not inherently nefarious reasons. Contrary to ATS's assertion, the Secretary did not have a "shift" in litigation positions, she was merely responding to events as they unfolded. *Id.* at 18.

ATS's concerns are not based in any actual evidence. ATS ignores the fact that the Secretary has not withdrawn her brief, has not changed her substantive legal position on the validity of the Silica Rule, or otherwise indicated that she would no longer be defending the rule. On the contrary, the Secretary's time-limited enforcement pause acknowledges that unforeseen restructuring of other governmental agencies, including the National Institute of Occupational Safety and Health, may impact the compliance date for coal mines. This is good government, not a situation where the "need to seek intervention" arose when a government party "ceased defending the … law." *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 280 (2022). ATS has therefore failed to make a "strong showing of

inadequate representation," "misfeasance or nonfeasance in protecting the public," or "'clear dereliction of duty'" required to overcome the presumption of adequate representation by the government. *Little Rock Sch. Dist.*, 378 F.3d at 780; *Stenehjem*, 787 F.3d at 922 (citation omitted); *Chiglo*, 104 F.3d at 188.

ATS "merely disagree[s] with the litigation strategy or objectives" of the Secretary. *Stenehjem*, 787 F.3d at 922 (quoting *Chiglo*, 104 F.3d at 188). This disagreement does not meet the high bar to overcome the presumption of adequate representation by the government.

### 4. Whether the Delay in Seeking Intervention Will Prejudice the Existing Parties

ATS seeks to intervene for purposes of participating in oral argument and "*any further briefing ordered by the Court*." ATS Motion to Intervene at 1 (emphasis added). In *Minnesota Milk Producers*, 153 F.3d at 646, this Court denied a motion to intervene noting that a movant's delayed entry into the case would prejudice another party who would be forced to respond to the movant's arguments.

Permitting ATS to intervene at this late stage presents the opportunity for ATS to seek leave to file additional briefs, which would require additional

motion practice by all parties and consume even more of the Court's and parties' resources. At this late stage in the litigation, the issues are well-defined and thoroughly developed. Allowing ATS to intervene may very well reopen these issues, and ATS may attempt to inject new issues—and delay—into the case. Unnecessarily revisiting the already developed issues in the case, opening new issues, and injecting further delay in the case would prejudice both parties who seek finality in this matter.

In sum, ATS has known about this litigation for a year, has failed to rebut the presumption that the Secretary is adequately protecting the public interest, and seeks to intervene at the eleventh hour of the litigation when the issues are fully mature. Intervention at this stage will prejudice the Secretary, and ATS's Motion to Intervene should be denied.

## B. ATS's Motion to Intervene on a Permissive Basis Under FRCP 24(b)(1)(B) Is Also Untimely

A motion to intervene on a permissive basis must also be "timely." FRCP 24(b)(1)(B). When determining timeliness on a permissive basis, courts consider the same factors as motions for intervention as of right: (1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for

the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties. *Planned Parenthood of the Heartland,* 664 F.3d at 718. For the same reasons discussed above, ATS's motion is untimely, and the Court should deny permissive intervention.

## II. ATS Has Not Demonstrated Article III Standing Because it Cannot Establish a Legally Cognizable Injury.

Under Article III, federal courts "do not exercise general legal oversight of the Legislative and Executive Branches." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Instead, a party must establish an injury that is both "legally and judicially cognizable." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). "This requires, among other things, that the [party] have suffered 'an invasion of a legally protected interest which is … concrete and particularized,' and that the dispute is 'traditionally thought to be capable of resolution through the judicial process.'" *Ibid.* (citations omitted). "Article III's standing requirement is a restraint on the 'judicial power' as unyielding as that placed on Congress by, for example, the First Amendment." *Mausolf*, 85 F.3d at 1300. ATS cannot demonstrate standing in its own right or as a representative of its members.

## A. ATS Cannot Establish Standing in Its Own Right

To establish standing, "a [party] must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by [the other party], and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA* v. *Alliance for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

In *Hippocratic Med.*, the plaintiffs were doctors and medical associations who did not prescribe the drug mifepristone. 602 U.S. at 385. The plaintiff doctors and associations challenged the FDA's regulation of other doctors who did prescribe mifepristone. *Ibid.* The plaintiff doctors challenged the FDA's decision to relax its enforcement of regulations governing the use and prescription of mifepristone. *Ibid.* Specifically, the plaintiff doctors alleged that the FDA's relaxed enforcement caused harm by diverting resources and time from other patients to treat patients with mifepristone complications, increasing risk of liability suits from treating those patients, and potentially increasing insurance costs. *Id.* at 390. The Court concluded that the causal link between the FDA's regulatory actions and the plaintiff doctors' alleged injury was "too speculative or otherwise too attenuated to establish standing." *Ibid.*

ATS's intervention in this case is foreclosed by the Supreme Court's decision in *Hippocratic Med.*, and ATS cannot demonstrate an injury in fact that is caused by the Secretary's enforcement—or pause in enforcement—of the Silica Rule.

### 1. There is (i) No Injury in Fact That is (ii) Caused by the Secretary

ATS seeks leave to intervene based on its perception of a "recent uncertainty of implementation" of the Silica Rule. ATS Motion to Intervene at 15. From this speculative assertion, ATS alleges that "it is reasonable to conclude that the patient pool of miners with severe silica-related disease will continue to grow, leading to increasing patient demand and strain on already-overburdened clinics and ATS members." *Id.* at 7. The ATS's argument is essentially that any change to the Silica Rule, including the coal compliance date, will result in a diversion of its resources.

The Supreme Court rejected this very argument in *Hippocratic Med.* The plaintiff-doctors in *Hippocratic Med.* alleged monetary and related injuries that would purportedly result as a result of the FDA's relaxed enforcement position for prescribing mifepristone. 602 U.S. at 391. ATS doctors assert the same downstream economic injury as the plaintiff-doctors in *Hippocratic Med.*—that MSHA's enforcement pause, or indeed any change to the Silica

Rule—will cause the "patient pool" of miners to "grow." ATS Motion to Intervene at 7. And these downstream economic injuries, the Court said, are "too speculative or otherwise too attenuated to establish standing." 602 U.S. at 390. But the Court went further, concluding that "the law has never permitted doctors to challenge the government's loosening of general public safety requirements simply because more individuals might then show up at emergency rooms or in doctors' office with follow-on injuries." *Id*. at 391.

ATS cannot establish an injury in fact that was caused by the Secretary, and therefore fails to meet these two elements of standing. The Court should deny ATS's motion for intervention.

### 2. ATS's Requested Relief Will Not Redress the Alleged Injury

ATS seeks only to intervene in this litigation "to participate in any further briefing ordered by this Court and in oral argument." ATS Motion to Intervene at 1. This participation will not redress the alleged injury. ATS, for example, concedes that on January 29, 2025, the Secretary filed a brief that "defended the Silica Rule, recognizing the deep consideration and thought put into the final outcome." *Id*. at 15. Indeed, ATS has filed its own *amicus* brief that reflected deep consideration and thought. There is no evidence to suggest that any further briefing—from the Secretary or ATS— would be

necessary in this case. Moreover, ATS cites to no evidence that the Secretary will do anything other than conduct a persuasive oral argument. Indeed, ATS concedes that "MSHA has not explicitly noted it intends to no longer defend the Silica Rule…." *Ibid.* Accordingly, ATS cannot meet this element of standing.

In sum, ATS has not demonstrated that it has standing in its own right because there is no injury in fact that is caused by the Secretary, and, in any event, the requested relief will not redress any alleged injury.

### B. ATS Cannot Establish Associational Standing

An organization has standing to assert the rights of its members if: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Worth v. Jacobson*, 108 F.4th 677, 685 (8th Cir. 2024). ATS's asserted bases for standing do not meet these requirements. "[T]he law has never permitted doctors to challenge the government's loosening of general public safety requirements simply because more individuals might then show up at emergency rooms or in doctors' offices with follow-on injuries." *All. for Hippocratic Med.*, 602 U.S. at 391.

## III.    Conclusion

The American Thoracic Society's motion to intervene is untimely and must be denied. Moreover, ATS has not overcome the presumption that the Secretary is adequately representing the general public interest in this case, and is therefore not entitled to intervene. ATS also lacks standing to intervene in this case because "[T]he law has never permitted doctors to challenge the government's loosening of general public safety requirements simply because more individuals might then show up at emergency rooms or in doctors' offices with follow-on injuries." *All. for Hippocratic Med.*, 602 U.S. at 391. The Court should therefore deny ATS's motion to intervene.

Respectfully submitted,

JONATHAN L. SNARE
Acting Solicitor of Labor

THOMAS A. PAIGE
Acting Associate Solicitor

s/ BRAD J. MANTEL
Counsel for Standards & Legal Advice
U.S. Department of Labor
Office of the Solicitor
Division of Mine Safety & Health
200 Constitution Avenue NW

Suite N4420-N4430
Washington, DC 20210
(202) 693-9331

Attorneys for MSHA and the
Secretary of Labor

### Certificate of Compliance

This document complies with Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Equity using Microsoft Word.

This document complies with Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,791 words.

Counsel also certifies that this motion has been scanned for viruses and is virus-free.

s/ Brad J. Mantel

## Certificate of Service

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on April 24, 2025, and registered users will be served via the CM/ECF system.

Keith Bradley
Peter S. Gould
Kayala Marie Mendez
Morgan Miller
Trevor Piouz Kehrer
Squire Patton Boggs, LLP

Aaron R. Gelb
Kathryn M. McMahon
Mark M. Trapp
Conn Maciel Carey, LLP

Kevin F. Fagan
Hill Pickens
United Mine Workers of America

David Jury
Keren Wheeler
United Steelworkers

Miranda Leppla
Kendall McPherson
American Thoracic Society

s/ Brad J. Mantel