United States Court of Appeals
for the Eighth Circuit

| | |
|---|---|
| NATIONAL STONE, SAND AND GRAVEL ASSOCIATION, ET AL.,<br>    *Petitioners*,<br><br>v.<br><br>MINE SAFETY & HEALTH ADMINISTRATION, ET AL.,<br>    *Respondents*. | No. 24-1889 |

**PETITIONERS' OPPOSITION TO THE AMERICAN THORACIC SOCIETY'S MOTION TO INTERVENE**

The motion to intervene ("ATS Mot.") by the American Thoracic Society ("ATS") is at least nine months late. ATS offers no justification for the court to authorize such a flagrant departure from the Federal Rules of Appellate Procedure. To allow intervention in this fashion—after parties filed principal briefs, and the Court has screened the case for oral argument—would eviscerate Federal Rule of Appellate Procedure 15(d). Moreover, ATS lacks standing to defend the Silica Rule that is at issue here; ATS is pursuing only a generalized interest in safety regulations. The Court should reject this improper attempt to intervene in a dispute that does not involve ATS.

1

## BACKGROUND

Respondent MSHA published the rule under review (the "Silica Rule") a year ago. 89 Fed. Reg. 28,218 (Apr. 18, 2024). Petitioner Sorptive Minerals Institute ("SMI") started this case 11 days later by petitioning this Court for direct review of the Rule. Doc. 5388294 (No. 24 1889). Under the governing statute, 30 U.S.C. § 811(d), such a petition is the exclusive path for a challenge to an MSHA health and safety standard. And the petition must be filed within 60 days of the standard's promulgation. *Id.* National Sand, Stone and Gravel, et al. ("NSSGA Petitioners") timely filed their petition on June 12, 2024, in the Fifth Circuit; that court subsequently transferred the petition to this Court pursuant to 28 U.S.C. § 2112.

No party sought to intervene during the summer of 2024, while the petitioners and MSHA navigated procedural complexities about where the case would be heard, and then negotiated a briefing schedule.

SMI and the NSSGA Petitioners filed their respective opening briefs on November 22, 2024. Docs. 5459824; 5459828 (No. 24 1889). MSHA submitted its answer brief on January 17, 2025. Doc. 5476148.

On February 19, 2025, ATS—along with American College of Chest Physicians, American Lung Association, and Association of Occupational and Environmental Clinics—filed an amicus brief in the case. Doc. 5487078. That brief presented data about silica and health conditions, described the Rule, and discussed

MSHA's statutory authority. *Id.* at 4. But the short two-and-a-half pages about MSHA's statutory authority do not interact at all with the specific issues raised by NSSGA Petitioners.

On February 21, 2025, the Court issued a notice that it was likely to hold an oral argument in the case. Doc. 5488037.

On April 2, 2025, NSSGA Petitioners moved for a stay of the Silica Rule's compliance deadlines, and for an emergency administrative stay of the compliance deadline (for coal mines) approaching on April 14, 2025. Docs. 5502800, 5502801. NSSGA Petitioners explained that they had been asking MSHA for two months what its position would be on a stay of the Silica Rule, and MSHA had not responded to state a position. Doc. 5502800, p.4. As NSSGA Petitioners observed, there was still no confirmed Administrator at the head of the agency. *Id.* (That state of affairs persists today.)

On April 8, 2025, MSHA announced a temporary four-month pause on enforcement of the Silica Rule. MSHA noted that the National Institute for Occupational Safety and Health ("NIOSH") was being restructured, with potential impacts on "the supply of approved and certified … personal dust monitors." Doc. 5505028, Ex. A. MSHA recognized that coal mine operators coming into compliance by the April 14, 2025 deadline would need to "obtain[] additional … sampling devices," which the restructuring could impede. "For these

3

technical reasons, MSHA will pause enforcement for coal mine operators, until August 18, 2025." *Id.* That pause, MSHA said, "does not create or remove any rights or duties," and was intended "to provide time for operators to secure necessary equipment and otherwise come into compliance." *Id.*

On April 9, 2025, MSHA filed a response to the stay motion stating that because MSHA had paused enforcement for four months, it "takes no position" on the stay motion. Doc. 5505028, p.2. The response elaborated how the pause was warranted given the challenges in accessing sampling devices that results from the changes at NIOSH. *Id.* at 2-3.

On April 11, 2025, the Court granted NSSGA Petitioners' stay motion. On that day, SMI also filed a motion to hold the case in abeyance for four months; the Court granted that motion as well.

## ARGUMENT

ATS's motion must be denied for multiple reasons. Not only is the motion deeply untimely in violation of Rule 15(d)'s 30-day deadline, but it also fails to satisfy several standards of Federal Rule of Civil Procedure 24. Nor does the Mine Act confer any right to intervene. *See* 30 U.S.C. § 811.

### I. ATS'S MOTION IS UNTIMELY BY MANY MONTHS.

Federal Rule of Appellate Procedure 15(d), as noted, requires an intervention in a direct-review case to be filed within 30 days of the petition. That deadline was

4

May 9, 2024, with respect to SMI's petition, and July 12, 2024, with respect to the petition of NSSGA Petitioners. ATS's motion is obviously untimely. It came 9 months after the latter deadline, and 10 months after the former.

ATS conveniently argues that the motion is timely under Federal Rule of Civil Procedure 24(a)(2), as that rule does not state a specific deadline for intervention. ATS contends it meets the four-factor heuristic standard that courts have developed for assessing when is too soon or too late to attempt intervention under Rule 24(a)(2). ATS Mot. 16-18. All of that is irrelevant because Rule 15(d) provides a specific deadline: 30 days after the petition. There is no room for multi-factor holistic evaluations when the Federal Rules of Appellate Procedure impose a fixed deadline.

Consistent with its erroneous reliance on Rule 24 as the standard for timeliness, ATS relies on *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267 (2022), in which a state's attorney general was allowed to intervene to defend a state law after a different state official, named as defendant, declined to take further steps to defend the law. ATS Mot. 16-17 (citing 595 U.S. at 279). *Cameron* did not involve Rule 15(d); indeed, the Supreme Court expressly noted that Rule 15(d) "concerns the review of *agency* action" and consequently was not at issue. 595 U.S. at 276 (emphasis in original). So, *Cameron* has no bearing on the application of the Rule 15(d)-time limit.

5

ATS does not even mention the Rule 15(d) deadline,[1] and certainly offers no argument why the 30-day deadline should not bar its intervention. To the contrary, ATS acknowledges that it has known about this case all along, but made a choice not to attempt intervention and instead file only an amicus brief. ATS Mot. 18. That ATS has changed its mind is not a legitimate reason to ignore the governing rule.

## II. ATS DOES NOT HAVE STANDING.

ATS asserts it has standing, derived from its members, to resist the vacatur of the Silica Rule. ATS Mot. 5-11, 13-14. Not so. ATS's members include doctors, one of whom is a pulmonologist in West Virginia who says he is the only pulmonologist at his clinic. ATS Mot. Ex. A, ¶ 9. That member "ha[s] concerns that … we will see an increase in both patient demand and severity of cases." *Id*.

Supreme Court precedent bars this theory of standing. "[T]here is no Article III doctrine of 'doctor standing' that allows doctors to challenge general government safety regulations." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 391 (2024). In *Alliance for Hippocratic Medicine*, an association of medical professionals challenged FDA's relaxation of certain rules regarding mifepristone. One of their asserted injuries for standing purposes was a collection of "various

---

[1] ATS mentions Rule 15(d) in passing, but says "it does not provide a standard that must be met." ATS Mot. 12. That is not quite correct. Rule 15(d) says "[t]he motion … must be filed within 30 days after the petition for review is filed." Fed. R. App. P. 15(d).

monetary and related injuries" such as "diverting resources and time from other patients to treat patients with mifepristone complications." *Id.* at 390. ATS's theory of standing is similar, namely that if the Silica Rule is vacated, members will have to treat more patients with medical problems caused by silica exposure. The Supreme Court rejected this sort of idea in *Alliance*, because "[a]llowing doctors or other healthcare providers to challenge general safety regulations as unlawfully lax would be an unprecedented and limitless approach and would allow doctors to sue in federal court to challenge almost any policy affecting public health." *Id.* at 391-92.

ATS's asserted injury is just as attenuated from the Silica Rule. The asserted injury depends on increases or changes in coal mining; ATS's declarant theorizes that an uptick in cases is due to "[r]ecent advances in mining, requiring miners to access deep, thin coal seams." ATS Mot., Ex. A ¶ 7. The asserted injury also depends on whatever the health and safety practices are at those coal mines, a link that ATS does not even explore. The asserted injury also depends on an assumption that clinics do not receive financial support matching the need for patient care, and on an unstated (and unsupported) assumption that the supply of doctors is fixed. "The chain of causation is simply too attenuated." 602 U.S. at 391.[2]

---

[2] That ATS's declarant is a pulmonologist, rather than a general practitioner, does not change the analysis. *Alliance for Hippocratic Medicine* did not suggest that association would have had standing if its members were obstetricians. To the

7

## III. ATS DOES NOT HAVE A SUFFICIENT INTEREST TO JUSTIFY INTERVENTION.

Moreover, standing is only a necessary condition for an intervenor. It is not sufficient to justify intervention. "Even if standing were found, the Movants have not shown that intervention is warranted." *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999).

Beyond standing, a proposed intervenor must show a "significantly protectable interest" in the subject of the case. *Donaldson v. United States*, 400 U.S. 517, 542 (1971). "[A]n undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *S. Cal. Edison v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002); *see also Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) (concluding an interest in lowering electric rates was "too high a level of

---

contrary, the Supreme Court recited several hypothetical examples that involved specialists, who would equally have lacked standing.
> "Consider some examples. EPA rolls back emissions standards for power plants—does a doctor have standing to sue because she may need to spend more time treating asthma patients? A local school district starts a middle school football league—does a pediatrician have standing to challenge its constitutionality because she might need to spend more time treating concussions? A federal agency increases a speed limit from 65 to 80 miles per hour—does an emergency room doctor have standing to sue because he may have to treat more car accident victims? The government repeals certain restrictions on guns—does a surgeon have standing to sue because he might have to operate on more gunshot victims?"

602 U.S. at 391.

generality"); *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990) (finding that a "generalized grievance" of industry members facing potential permit modifications did not constitute a significantly protectable interest).

Such an "undifferentiated, generalized interest" is exactly what ATS presents. Its members are doctors who treat the general public for pulmonary diseases. ATS asserts that some of its members will treat more patients if the Rule is vacated. It identifies no other type of interest. By comparison, in *Westlands Water District v. United States*, the Ninth Circuit held the Environmental Defense Fund ("EDF") had no Rule 24(a) right to intervene in a lawsuit demanding the release of additional water from government-controlled dams. 700 F.2d 561, 562-63 (9th Cir. 1983). The court observed that while "EDF and its members do indeed have an interest" in the case, given their interest in conservation and quality of water in the region, "[t]he same can be said of a substantial portion of the population of northern California." *Id.* at 563. That generalized interest "is not a legally protectible interest" sufficient for a right to intervene. *Id. Southern California Edison*, quoted above, held that an association of companies that purchase significant amounts of electricity could not intervene by right in a regulatory challenge demanding approval of the utility's rate increase. 307 F.3d at 801-02. *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.* similarly rejected intervention from electricity consumers objecting to a rate increase. 732 F.2d 452, 454-67 (5th Cir. 1984) (*en banc*). So did *Public Service*

*Co. of New Hampshire*, which observed that "every electricity consumer … yearns for lower electric rates." 136 F.3d at 205. The core rationale of the First Circuit in that case applies fully here: "This is not a case in which ongoing litigation directly threatens an economic right or benefit presently enjoyed by any would-be intervenor." *Id.* That ATS has advocated for the Silica Rule does not make it different from the interest groups denied intervention in the cases just mentioned. ATS seeks to preserve a regulation that it favors, for reasons that are presumably equally shared by many doctors. That is a "generalized interest."

IV. **MSHA ADEQUATELY REPRESENTS ATS'S INTERESTS.**

"[W]hen one of the parties is an arm or agency of the government, and the case concerns a matter of 'sovereign interest,' … the government is 'presumed to represent the interests of all its citizens.'" *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996). This is certainly such a case. Indeed, the defense (if possible) of MSHA's regulation is a sovereign matter; and the mandate under which MSHA operated was to protect the health of miners, exactly the interest that ATS asserts for itself. Unsurprisingly, ATS acknowledges it had originally taken for granted MSHA adequately represents its interests. ATS Mot. 15.

To rebut the presumption, a proposed intervenor must "make[] a strong showing of inadequate representation." *Mausolf*, 85 F.3d at 1303. That presumption "may be overcome by the intervenor only upon a showing of adversity of interest,

the representative's collusion with the opposing party, or nonfeasance by the representative." *Texas v. Dep't of Energy*, 754 F.2d 550, 553 (5th Cir. 1985). ATS shows no actual adversity of interest, or collusion. And "nonfeasance" requires proof of a "clear dereliction of duty" by the agency. *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997). ATS cannot point to any such dereliction by MSHA. ATS says that "uncertainty of implementation due to staffing cuts … give[] ATS great concern." ATS Mot. 15. But *uncertainty* hardly shows the agency has determined to abandon the Silica Rule, much less that it has committed a "clear dereliction of duty."

ATS identifies two circumstances that it says raise doubt about MSHA's commitment to the Rule. First, ATS notes that MSHA "announced a pause in enforcement," for four months. ATS Mot. 15. But as MSHA explained, that pause was justified by exigent circumstances outside of MSHA's control: Actions at a different agency (the Department of Health and Human Services, within which NIOSH is a component) make it much more challenging, in the immediate term, for mine operators to obtain the tools and supplies they need for compliance. Doc. 5505028, Ex. A. MSHA made clear that the pause "does not create or remove any rights or duties," and that it expected mine operators to "come into compliance." *Id*. Merely pausing enforcement of a brand-new rule for four months, while insisting that the industry work assiduously to comply with it, does not suggest MSHA's

11

commitment to the Rule has decreased.

Second, ATS notes that MSHA "did not explicitly object to Petitioners' merits of the Motion for Stay, nor present any dispute of Petitioners' argument," "failure to oppose a stay of the rule on the merits is directly opposed to the Unions' interest." ATS Mot. 15. But MSHA's non-opposition cannot be enough to show MSHA is an inadequate representative. By comparison, in *Chiglo*, the government body declined to appeal the case in which the intervenors claimed an interest. That failure to appeal was not "the sort of nonfeasance that would render the City's representation of the public inadequate." 104 F.3d at 188. "Even a decision not to take an appeal is ordinarily within the discretion of the representative." *Id*. A "failure to appeal" would have to be "combined with diverging interests between the representative and the proposed intervenor." *Id*. Here, ATS points to far less: a non-opposition to a stay motion. The merits of the case remain live and disputed—MSHA has not withdrawn its answering brief—so this non-opposition was a far less consequential choice than the decision not to appeal in *Chiglo*.

In *Chiglo*, the government defendant's decision not to appeal was an understandable strategic choice, given the difficulties of an appeal. *Id*. at 189. Similarly, MSHA's response was also a sensible strategic decision. NSSGA Petitioners provided good reasons for a stay, and their showing of irreparable harm would be difficult to refute. That MSHA did not oppose the stay does not show

12

MSHA wanted a stay, or that it had different interests from ATS on the point. After all, MSHA persistently did not endorse a stay for months, despite NSSGA Petitioners' pressing for an answer; and MSHA distinctly did not accede to a stay in its response to the stay motion.

In short, ATS infers from two actions by MSHA that its interests now diverge. That inference is unjustified. Both the pause on enforcement and MSHA's response to the stay motion were consistent with a continuing defense by MSHA of the Silica Rule and with its continuing to be an adequate representative of the public interest.

## V. INTERVENTION BY ATS WOULD PREJUDICE THE PETITIONERS.

ATS asserts that "allowing ATS to participate in any further briefing and oral arguments" would not prejudice the parties. ATS Mot. 20.

Participation by ATS in oral argument would be prejudicial all by itself. ATS has not previously expressed any view about the merits of NSSGA Petitioners' arguments, nor about all of SMI's arguments. ATS's amicus brief expressed views that silica is generally a health hazard. But it did not address any of the substantive arguments that either group of petitioners made about the Silica Rule itself. So ATS would present, at oral argument, views about which none of the petitioners have been informed, nor respondent, nor the Court. That situation would be untenable and unfair. (Conversely, if ATS's views are entirely identical with what MSHA said in its answering brief, then there is no need for ATS's intervention—a sterling

13

example of why amici are permitted to participate in oral argument only with the Court's permission. Fed. R. App. P. 29(a)(8).)

ATS also says it wants to participate in such "further briefing" as the Court might order. ATS Mot. 20. While ATS does not explicitly request supplemental briefing, it also does not contemplate whether the other parties might need to ask for such briefing just to learn what ATS views are before oral argument. In any event, supplemental briefing would be prejudicial. MSHA has already filed a brief of twice-normal length, to which petitioners must respond. And ATS has already filed its own amicus brief, in which it had an opportunity to respond to any argument it wished. Doc. 5487078. On top of that, a further supplemental brief containing whatever different arguments ATS might make would be an unfair burden on petitioners. Notably, had ATS sought (and been granted) intervention in a timely fashion, these briefing issues would have been worked out well in advance of the opening briefs. Such regularity in the proceedings is surely one of the reasons for having the 30-day Rule 15(d) deadline in the first place.

## VI. PERMISSIVE INTERVENTION WOULD BE IMPROPER.

ATS suggests the Court could grant it permissive intervention despite its lack of a significant interest that is not adequately represented. ATS Mot. 19-20. It cites no example in which a court has allowed permissive intervention in a direct-review case. By contrast, *Texas v. Department of Energy* denied such intervention because

Federal Rule of Civil Procedure 24(b)(2) allows permissive intervention only to a party that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2); 754 F.2d at 553. An intervenor that simply wants to the respondent's rule to remain in place does not have a "claim" at all; and it has no "defense" because it is not facing any claims, here or in any other case. Rule 24(b)(2) is simply not an appropriate vehicle for importing parties that simply prefer the policy that the respondent is defending.

Further, permissive intervention must also be timely; and ATS has, as explained above, no excuse for openly ignoring the deadline in Rule 15(d).

## CONCLUSION

ATS's motion to intervene should be denied.

April 24, 2025                                      Respectfully submitted,

                                                    */s/ Keith Bradley*
                                                    KEITH BRADLEY
                                                    PETER S. GOULD
                                                    KAYLA MARIE MENDEZ
                                                    717 17th Street, Suite 1825
                                                    Denver, CO 80202
                                                    T: (303) 830-1776
                                                    F: (303) 894-9239
                                                    keith.bradley@squirepb.com
                                                    peter.gould@squirepb.com
                                                    kayla.mendez@squirepb.com

Morgan Miller
2550 M Street NW
Washington, DC 20037
morgan.miller@squirepb.com

Trevor Pirouz Kehrer
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
trevor.kehrer@squirepb.com

Squire Patton Boggs (US) LLP

*Counsel for National Stone, Sand & Gravel Association, et al.*

*/s/ Kathryn McMahon*
Mark M. Trapp
Kathryn McMahon
53 West Jackson Blvd, Suite 1352
Chicago, IL 60604
T: (312) 809-8122
mtrapp@conmaciel.com
kmcmahon@connmaciel.com

Conn Maciel Carey LLP

*Counsel for Sorptive Minerals Institute and Blue Mountain Production Company*

## CERTIFICATE OF COMPLIANCE

In compliance with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,481 words, as determined by the word-count function of Microsoft Office 365.

In compliance with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), counsel prepared this document in 14-point Times New Roman font using Microsoft Office 365.

*/s/ Keith Bradley*
Keith Bradley

## CERTIFICATE OF SERVICE

I certify that on April 24, 2025, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. All parties are represented by counsel who are registered CM/ECF users.

*/s/ Keith Bradley*
Keith Bradley
