United States Court of Appeals
for the Eighth Circuit

| | |
|---|---|
| NATIONAL STONE, SAND AND GRAVEL ASSOCIATION, ET AL., *Petitioners*, <br><br> v. <br><br> MINE SAFETY & HEALTH ADMINISTRATION, ET AL., *Respondents*. | No. 24-1889 |

**PETITIONERS' OPPOSITION TO UNITED MINE WORKERS OF AMERICA INTERNATIONAL UNION'S MOTION TO INTERVENE**

The motion to intervene ("UMWA Mot.") by the United Mine Workers of America International Union ("UMWA") is at least nine months late. UMWA offers no justification for the court to authorize such a flagrant departure from the Federal Rules of Appellate Procedure. To allow intervention in this fashion—after parties filed principal briefs, and the Court has screened the case for oral argument—would eviscerate Federal Rule of Appellate Procedure 15(d). Even more astonishing, UMWA requests that the Court allow UMWA to participate in oral argument, even though (due to its attempted intervention being so tardy) it has filed no brief on the merits to inform petitioners what UMWA's arguments would be. The Court should reject this improper attempt.

1

## BACKGROUND

Respondent MSHA published the rule under review (the "Silica Rule") a year ago. 89 Fed. Reg. 28,218 (Apr. 18, 2024). Petitioner Sorptive Minerals Institute ("SMI") started this case 11 days later by petitioning this Court for direct review of the Rule. Doc. 5388294 (No. 24-1889). Under the governing statute, 30 U.S.C. § 811(d), such a petition is the exclusive path for a challenge to an MSHA health and safety standard. And the petition must be filed within 60 days of the standard's promulgation. *Id.* National Sand, Stone and Gravel Association *et al.* ("NSSGA Petitioners") timely filed their petition on June 12, 2024, in the Fifth Circuit; that court subsequently transferred the petition to this Court pursuant to 28 U.S.C. § 2112.

No party sought to intervene during the summer of 2024, while the petitioners and MSHA navigated procedural complexities about where the case would be heard, and then negotiated a briefing schedule.

SMI and the NSSGA Petitioners filed their respective opening briefs on November 22, 2024. Docs. 5459824; 5459828 (No. 24-1889). MSHA submitted its answer brief on January 17, 2025. Doc. 5476148.[1]

---

[1] UMWA says MSHA "filed" its brief on January 29. UMWA Mot. 14. That was the date on which the Court accepted the brief. MSHA's submission was on January 17, consistent with the Court's deadlines in this case. *See* docket note accompanying Doc. 5476148.

On February 19, 2025, UMWA—along with United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO/CLC, and the National Black Lung Association—filed an amicus brief in the case. Doc. 5487074. That brief discussed only one issue, namely the "central contention raised in the opening brief filed by [SMI]" that a Mine Act regulation must be premised on a "significant risk." *Id.* at 4. UMWA's amicus brief did not address any of the issues raised by NSSGA Petitioners.

On February 21, 2025, the Court issued a notice that it was likely to hold an oral argument in the case. Doc. 5488037.

On April 2, 2025, NSSGA Petitioners moved for a stay of the Silica Rule's compliance deadlines, and for an emergency administrative stay of the compliance deadline (for coal mines) approaching on April 14, 2025. Docs. 5502800, 5502801. NSSGA Petitioners explained that they had been asking MSHA for two months what its position would be on a stay of the Silica Rule, and MSHA had not responded to state a position. Doc. 5502800, p.4. As NSSGA Petitioners observed, there was still no confirmed Administrator at the head of the agency. *Id.* (That state of affairs persists today.)

On April 8, 2025, MSHA announced a temporary four-month pause on enforcement of the Silica Rule. MSHA noted that the National Institute for Occupational Safety and Health ("NIOSH") was being restructured, with potential

3

impacts on "the supply of approved and certified … personal dust monitors." Doc. 5505028, Ex. A. MSHA recognized that coal mine operators coming into compliance by the April 14, 2025 deadline would need to "obtain[] additional … sampling devices," which the restructuring could impede. "For these technical reasons, MSHA will pause enforcement for coal mine operators, until August 18, 2025." *Id.* That pause, MSHA said, "does not create or remove any rights or duties," and was intended "to provide time for operators to secure necessary equipment and otherwise come into compliance." *Id.*

On April 9, 2025, MSHA filed a response to the stay motion stating that because MSHA had paused enforcement for four months, it "takes no position" on the stay motion. Doc. 5505028, p.2. The response elaborated how the pause was warranted given the challenges in accessing sampling devices that results from the changes at NIOSH. *Id.* at 2-3.

On April 11, 2025, the Court granted NSSGA Petitioners' stay motion. On that day, SMI also filed a motion to hold the case in abeyance for four months; the Court granted that motion as well.

## ARGUMENT

UMWA's motion must be denied for multiple reasons. Not only is the motion deeply untimely in violation of Rule 15(d)'s 30-day deadline, it also fails to satisfy several standards of Federal Rule of Civil Procedure 24. Nor does the Mine Act

4

confer any right to intervene. *See* 30 U.S.C. § 811.

I.     **UMWA'S MOTION IS UNTIMELY BY MANY MONTHS.**

Federal Rule of Appellate Procedure 15(d), as noted, requires an intervention in a direct-review case to be filed within 30 days of the petition. That deadline was May 9, 2024, with respect to SMI's petition, and July 12, 2024, with respect to the petition of NSSGA Petitioners. UMWA's motion is obviously untimely. It came 9 months after the latter deadline, and 10 months after the former.

   A.     **Federal Rule of Appellate Procedure 15, not Federal Rule of Civil Procedure 24, establishes the standard for timeliness.**

UMWA conveniently argues that the motion is timely under Rule 24(a)(2), as that rule does not state a specific deadline for intervention. UMWA contends it meets the four-factor heuristic standard that courts have developed for assessing when is too soon or too late to attempt intervention. UMWA Mot. 14-18. All of that is irrelevant because Rule 15(d) provides a specific deadline: 30 days after the petition. There is no room for multi-factor holistic evaluations when the Federal Rules of Appellate Procedure impose a fixed deadline.

Consistent with its erroneous reliance on Rule 24 as the standard for timeliness, UMWA describes various cases in which parties were allowed to intervene at various stages of litigation. UMWA Mot. 15. All of those cases involved intervention directly under Rule 24 and thus have no bearing on the application of the Rule 15(d)-time limit.

5

## B. Intervention after a 10-month delay would flout Rule 15(d).

UMWA identifies just two cases of intervention in a direct-review case requested more than 30 days after the petition. Those two examples demonstrate the extraordinary nature of UMWA's request. In *International Union of Operating Engineers, Local 18 v. NLRB*, the NLRB decided a dispute between a union and six employers that had accused the union of unfair labor practices. 837 F.3d 593 (6th Cir. 2016). Supreme Court precedent holds that in such a case, the party prevailing at the NLRB is allowed to intervene to preserve the NLRB's decision. *Id.* at 594 (citation omitted). The employers moved to intervene, and did so within the 30-day deadline of Rule 15(d). *Id.* at 595. But "[d]ue to a scrivener's error when drafting the motion," one of the six employers was omitted. *Id.* The employers submitted an "amended motion," including that omitted employer, on day 50. *Id.* No party opposed any of the interventions at all, notably including the sixth employer. *Id.* In that circumstance, the Sixth Circuit accepted that last employer's intervention, because Rule 15(d) is not a jurisdictional limitation. *Id.*

The *Operating Engineers* decision is inapposite here. There was no error causing UMWA to miss the 30-day deadline. UMWA chose not to intervene when the petitions were filed; they admit they have known about this litigation from the outset. UMWA Mot. 14. They missed the deadline not by 20 days, but by 9 to 10 months. And whereas adding a sixth intervenor to the five timely intervenors

6

made no difference to the course of the litigation in *Operating Engineers*, here it would reshape the litigation. There are currently no intervenors, and UMWA is openly seeking to step into the oral argument when that happens. UMWA Mot. 14. *Operating Engineers* does not suggest a would-be intervenor can do that, through a 10-months-late motion.

UMWA's other example, *United Gas Pipe Line Co. v. FERC*, 824 F.2d 417 (5th Cir. 1987), is a four-decades-old case noting critically that the court had "at times … grant[ed] motions for leave to intervene out of time." *Id.* at 436 n.22. The case noted that this practice is problematic because it can lead to intervenors presenting arguments that arrive well beyond the statutory deadlines for challenging agency action. *Id.* at 435-36 & n.22. In the case itself, the court allowed one intervention out of time, but without that intervenor's actually filing a brief in the case. *Id.* at 424 n.10. UMWA's approach would severely undermine that rationale, by allowing UMWA to present arguments nearly a year after the deadline for petitions. *Cf. Alabama Power Co. v. ICC*, 852 F.2d 1361, 1367 (D.C. Cir. 1988) (allowing late intervention would "sanction[] an undisputed failure to comply with applicable statutes and rules").

The Fifth Circuit is no longer so willing to entertain untimely intervention. For example, in one case, a labor organization moved for intervention 3 days late, and then a union filed 21 days late. Lab. Council for Latin Am. Advancement Mot.

7

to Intervene, *East Fork Enterprises, Inc. v. EPA*, No. 24-60227 (5th Cir. July 12, 2024); AFL-CIO Mot. to Intervene, *East Fork*, No. 24-60227 (5th Cir. June 24, 2024). The Fifth Circuit denied both. Ord. Denying Lab. Council Mot., *East Fork*, No. 24-60227 (5th Cir. July 10, 2024); Ord. Denying AFL-CIO Mot., *East Fork*, No. 24-60227 (5th Cir. July 30, 2024).

### C. UMWA has no good cause for its extreme delay.

To be sure, the Court has the authority to allow an untimely motion. But the Court can only do so "[f]or good cause." Fed. R. App. P. 26(b). UMWA does not even acknowledge that requirement, though it is set forth plainly in Rule 26(b). UMWA Mot. 17. UMWA certainly makes no effort to show good cause. *Id.*

Nor can UMWA justify a 10-month-delayed intervention. UMWA acknowledges it has known about this case from the beginning. UMWA Mot. 14. It chose not to attempt intervention at that time, even though the 30-day deadline in Rule 15(d) is quite clear. UMWA asserts it "had no reason to believe," at the time, that MSHA "would not adequately represent its interests"—whereas now, UMWA claims, it has doubts. *Id.* If that rationale were sufficient, the Rule 15(d) deadline would be meaningless. A person interested in a case could follow along, even submit an *amicus* brief if it chose (as UMWA did here), and then the person could step in at a later time, whenever the person found the conduct of the main parties unsatisfactory. Mere disappointment in a respondent's litigation choices cannot be

a valid justification for so wildly exceeding the 30-day deadline.

## II. MSHA ADEQUATELY REPRESENTS UMWA'S INTERESTS.

"[W]hen one of the parties is an arm or agency of the government, and the case concerns a matter of 'sovereign interest,' … the government is 'presumed to represent the interests of all its citizens.'" *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996). This is certainly such a case. Indeed, the defense (if possible) of MSHA's regulation is a sovereign matter; and the mandate under which MSHA operated was to protect the health of miners as proscribed and prescribed by the Mine Act, exactly the interest that UMWA asserts for itself. Unsurprisingly, UMWA acknowledges it originally took for granted that MSHA adequately represents its interests. UMWA Mot. 14.

To rebut the presumption, a proposed intervenor must "make[] a strong showing of inadequate representation." *Mausolf*, 85 F.3d at 1303. That presumption "may be overcome by the intervenor only upon a showing of adversity of interest, the representative's collusion with the opposing party, or nonfeasance by the representative." *Texas v. Dep't of Energy*, 754 F.2d 550, 553 (5th Cir. 1985). UMWA shows no actual adversity of interest, or collusion. And "nonfeasance" requires proof of a "clear dereliction of duty" by the agency. *Chiglo v. City of Preston*, 104 F.3d 185, 188 (8th Cir. 1997). UMWA cannot point to any such dereliction by MSHA. UMWA says that "whether the Agency will continue to

support, rescind, or revise the Silica Rule, may remain undecided for the foreseeable future." UMWA Mot. 2. UMWA also suggests it is "now unclear whether MSHA will continue to defend the Silica Rule." *Id.* at 20. Even if true, that policy questions are *undecided* and MSHA's future plans are *unclear* hardly shows the agency has determined to abandon the Silica Rule, much less that it has committed a "clear dereliction of duty."

UMWA identifies two circumstances that it says raise doubt about MSHA's commitment to the Rule. First, it notes that MSHA "announced a pause in enforcement," for four months. UMWA Mot. 2. But as MSHA explained, that pause was justified by exigent circumstances outside of MSHA's control: Actions at a different agency (the Department of Health and Human Services, within which NIOSH is a component) make it much more challenging, in the immediate term, for mine operators to obtain the tools and supplies they need for compliance. Doc. 5505028, Ex. A. MSHA made clear that the pause "does not create or remove any rights or duties," and that it expected mine operators to "come into compliance." *Id*. Merely pausing enforcement of a brand-new rule for four months, while insisting that the industry work assiduously to comply with it, does not suggest MSHA's commitment to the Rule has decreased.

Second, UMWA frets that MSHA's "failure to oppose a stay of the rule on the merits is directly opposed to the Unions' interest." UMWA Mot. 20. But

MSHA's non-opposition cannot be enough to show MSHA is an inadequate representative. By comparison, in *Chiglo*, the government body declined to appeal the case in which the intervenors claimed an interest. That failure to appeal was not "the sort of nonfeasance that would render the City's representation of the public inadequate." 104 F.3d at 188. "Even a decision not to take an appeal is ordinarily within the discretion of the representative." *Id*. A "failure to appeal" would have to be "combined with diverging interests between the representative and the proposed intervenor." *Id*. Here, UMWA points to far less: a non-opposition to a stay motion. The merits of the case remain live and disputed—MSHA has not withdrawn its answering brief—so this non-opposition was a far less consequential choice than the decision not to appeal in *Chiglo*.

In *Chiglo*, the government defendant's decision not to appeal was an understandable strategic choice, given the difficulties of an appeal. *Id*. at 189. Similarly, MSHA's response was also a sensible strategic decision. NSSGA Petitioners provided good reasons for a stay, and their showing of irreparable harm would be difficult to refute. That MSHA did not oppose the stay does not show MSHA wanted a stay, or that it had different interests from UMWA on the point. After all, MSHA persistently did not endorse a stay for months, despite NSSGA Petitioners' pressing for an answer; and MSHA distinctly did not accede to a stay in its response to the stay motion.

11

In short, UMWA infers from two actions by MSHA that its interests now diverge. That inference is unjustified. Both the pause on enforcement and MSHA's response to the stay motion were consistent with a continuing defense by MSHA of the Silica Rule and with its continuing to be an adequate representative of the public interest.

### III. INTERVENTION BY UMWA WOULD PREJUDICE THE PETITIONERS.

UMWA asserts that petitioners would not be prejudiced because UMWA "only seek[s] to participate in the oral argument and in any supplemental briefing that the Court may order." UMWA Mot. 16.

Participation by UMWA in oral argument would be prejudicial all by itself. UMWA has not previously expressed any view about the merits of NSSGA Petitioners' arguments, nor about all of SMI's arguments. UMWA's amicus brief addressed solely a question of statutory interpretation that arose in SMI's opening brief. So UMWA would present, at oral argument, views about which none of the petitioners have been informed, nor respondent, nor the Court. That situation would be untenable and unfair. (Conversely, if UMWA's views are entirely identical with what MSHA said in its answering brief, then there is no need for UMWA's intervention—a sterling example of why amici are permitted to participate in oral argument only with the Court's permission. Fed. R. App. P. 29(a)(8).)

UMWA also says it wants to participate in such supplemental briefing as the

Court might order. UMWA Mot. 16. While UMWA does not explicitly request supplemental briefing, it also does not contemplate whether the other parties might need to ask for such briefing just to learn what UMWA's views are before oral argument.[2] In any event, supplemental briefing would be prejudicial. MSHA has already filed a brief of twice-normal length, to which petitioners must respond. And UMWA has already filed its own amicus brief, in which it had an opportunity to respond to any argument it wished. Doc. 5487074. On top of that, a further supplemental brief containing whatever different arguments UMWA might make would be an unfair burden on petitioners. Notably, had UMWA sought (and been granted) intervention in a timely fashion, these briefing issues would have been worked out well in advance of the opening briefs. Such regularity in the proceedings is surely one of the reasons for having the 30-day Rule 15(d) deadline in the first place.

Further, UMWA's conduct in the litigation already demonstrates the prejudice that all parties would suffer from UMWA's further involvement. MSHA has moved for a 30-day extension on its response to the motion to intervene. Doc. 5507987 (No. 24-1889). As MSHA points out, the case is in abeyance, with no activities for

---

[2] UMWA promises to "abide by any decisions of the Court as to the scheduling of the oral argument and of any additional proceedings." UMWA Mot. 16. That promise is hollow, because every party before the Court must abide by any decisions the Court makes.

13

the next four months. So a 30-day delay cannot harm UMWA. *Id.* ¶ 2. Yet evidently UMWA opposes the extension, *id.* ¶ 4—an opposition that would force the Court to spend its time on unnecessary adjudication of a disputed motion for an extension, and force MSHA to reply to an unnecessary opposition. As this episode over a routine extension demonstrates, adding a party to the case increases complexity and cost—burdens that cannot be justified by UMWA's (untimely) asserted interest.

## IV. PERMISSIVE INTERVENTION WOULD BE IMPROPER.

UMWA suggests the Court could grant it permissive intervention despite its lack of a significant interest that is not adequately represented. UMWA Mot. 21-22. It cites no example in which a court has allowed permissive intervention in a direct-review case. By contrast, *Texas v. Department of Energy* denied such intervention because Federal Rule of Civil Procedure 24(b)(2) allows permissive intervention only to a party that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2); 754 F.2d at 553. An intervenor that simply wants to the respondent's rule to remain in place does not have a "claim" at all; and it has no "defense" because it is not facing any claims, here or in any other case. Rule 24(b)(2) is simply not an appropriate vehicle for importing parties that simply prefer the policy that the respondent is defending.

Further, permissive intervention must also be timely; and UMWA has, as explained above, no excuse for openly ignoring the deadline in Rule 15(d).

14

## CONCLUSION

UMWA's motion to intervene should be denied.

April 24, 2025

Respectfully submitted,

*/s/ Keith Bradley*
KEITH BRADLEY
PETER S. GOULD
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
T: (303) 830-1776
F: (303) 894-9239
keith.bradley@squirepb.com
peter.gould@squirepb.com
kayla.mendez@squirepb.com

MORGAN MILLER
2550 M Street NW
Washington, DC 20037
morgan.miller@squirepb.com

TREVOR PIROUZ KEHRER
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
trevor.kehrer@squirepb.com

SQUIRE PATTON BOGGS (US) LLP

*Counsel for National Stone, Sand & Gravel Association, et al.*

*/s/ Kathryn McMahon*
MARK M. TRAPP
KATHRYN MCMAHON
53 West Jackson Blvd, Suite 1352
Chicago, IL 60604

T: (312) 809-8122
mtrapp@conmaciel.com
kmcmahon@connmaciel.com

CONN MACIEL CAREY LLP

*Counsel for Sorptive Minerals Institute and Blue Mountain Production Company*

# CERTIFICATE OF COMPLIANCE

In compliance with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 3,295 words, as determined by the word-count function of Microsoft Office 365.

In compliance with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), counsel prepared this document in 14-point Times New Roman font using Microsoft Office 365.

*/s/ Keith Bradley*
Keith Bradley

**CERTIFICATE OF SERVICE**

I certify that on April 24, 2025, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. All parties are represented by counsel who are registered CM/ECF users.

*/s/ Keith Bradley*
Keith Bradley
