# In the
# United States Court of Appeals
## for the Eighth Circuit

---

Sorptive Minerals Institute,

*Petitioner,*

v.

Mine Safety and Health Administration, et al.,

*Respondents.*

**No. 24-2661**

National Stone, Sand, and Gravel Association, et al.,

*Petitioners,*

v.

Mine Safety & Health Review Administration, et al.,

*Respondents.*

**No. 24-2663**

Sorptive Minerals Institute, et al.,

*Petitioners,*

v.

Mine Safety & Health Review Administration, et al.,

*Respondents.*

_____

Petitioners for Review of an Order of the Federal Mine Safety & Health Administration
(89 FR 28218) (MSHA-2023-0001)

**PROPOSED INTERVENOR UNIONS' JOINT MOTION FOR RECONSIDERATION**

Kevin F. Fagan, General Counsel
Hill Pickens, Staff Attorney
United Mine Workers of America
18354 Quantico Gateway Drive, Suite 200
Triangle, VA 22172
(703) 291-2425

*Counsel to Proposed Intervenor United Mine Workers of America International Union*

David Jury, General Counsel
Keren Wheeler, Associate General Counsel
United Steelworkers
Boulevard of the Allies, Room 807
Pittsburgh, PA 15222-1209
(412) 562-2413

*Counsel to Proposed Intervenor United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC*

On April 14, 2025, the Unions filed a Motion to Intervene in this administrative review proceeding. On April 24, 2025, Respondent MSHA and Petitioner Industry Groups filed their respective responses in opposition to the Unions' intervention. On April 30, 2025, as the Unions were preparing their reply, this Court issued a summary order denying the Unions' Motions. Because the Court's order is not accompanied by an opinion, and because the Unions were not able to file their reply before the Court issued its order, the Unions are concerned that the Court may have denied the Unions' motion on the basis of one or more of the infirm arguments raised by MSHA and the Industry Groups, which the Unions had not had the opportunity to rebut.

For this reason, and pursuant to Federal Rule of Appellate Procedure 27(b), the Unions respectfully request the Court to reconsider its denial of the Unions' April 14, 2025 Motion to Intervene. In support of this request, the Unions state as follows:

**I.    Intervention Is Not Barred by FRAP 15(d)**

MSHA and the Industry Groups both argue that the Unions' Motion is untimely and must therefore be denied. Petitioners Opp. at 5-8. MSHA Opp. at 4-15. Both parties suggest that the Court must impose FRAP 15(d)'s 30-day deadline in order to deny the Unions' request for intervention. However, the opposing parties' novel interpretation of the 30-day timeline as a strict jurisdictional limit is inconsistent with how courts typically apply this rule.

In their responses, neither MSHA nor the Industry Groups cite a single case, much less a reported case, in which a court has denied intervention to a proposed intervenor solely on the basis of the motion's coming after Rule 15(d)'s 30-day deadline. The Industry Groups refer the Court to two orders in a recent Fifth Circuit case denying two motions to intervene, one motion filed by the Labor Council for Latin American Advancement, the other by the AFL-CIO. *See* Petitioners Opp. at 7-8; Lab. Council for Latin Am. Advancement Mot. to Intervene, *East Fork Enterprises, Inc. v. EPA*, No. 24-60227[1] (5th Cir. July 12, 2024); AFL-CIO Mot. to Intervene, *East Fork*, No. 24-60227 (5th Cir. June 24, 2024). Ord. Denying Lab. Council Mot., *East Fork*, No. 24-60227 (5th Cir. July 10, 2024); Ord. Denying AFL-CIO Mot., *East Fork*, No. 24-60227 (5th Cir. July 30, 2024). While Petitioners cite these orders for the proposition that the Fifth Circuit is "no longer so willing to entertain untimely intervention," Petitioners Opp. at 7, the orders are accompanied by no corresponding opinion and give no reason to believe untimeliness was the basis for the denial. Indeed, in the same case, the Fifth Circuit *grants* a motion for intervention filed by the American Chemistry Council, even though the Chemistry

---

[1] While Industry Groups cite the leading case, No. 24-60227, the motions and orders referenced were actually filed and issued in another case, No. 24-60256, which was consolidated with No. 24-60227. For the Court's convenience, the Unions do the same.

Council's motion to intervene was filed *after* both the Labor Council's and the AFL-CIO's motions to intervene. *See* Am. Chemistry Council Motion to Intervene, *East Fork*, No. 24-60227[2] (5th Cir. July 26, 2024); Ord. Granting Chemistry Council Mot., *East Fork*, No. 24-60227[3] (5th Cir. July 30, 2024). If the Fifth Circuit denied the Labor Council and the AFL-CIO's motions because they were untimely, then the Chemistry Council's motion to intervene would likewise have been denied. Accordingly, if anything can be known about the basis for the Fifth Circuit's denial of the Labor Council and AFL-CIO's motions, it is that the Fifth Circuit did not deny them because they were untimely. Further, the orders are unpublished, hold no precedential or persuasive value for this Court, and do not support a denial of the Unions' Motion to Intervene.

The Industry Groups also point to the D.C. Circuit's decision in *Ala. Power Co. v. Interstate Commerce Commission*, 852 F.2d 1361 (D.C. Cir 1988), in which the court denied intervention to Conrail, a railroad corporation subject to rules promulgated by the Interstate Commerce Commission. In that case, however, Conrail's motion to intervene was an obvious attempt to short circuit the

---

[2] See footnote 1, above.
[3] See footnote 1, above.

3

jurisdictional requirement, established by statute[4], to file a petition for review of the ICC's order within 60 days. *See Ala. Power Co* at 1367. *See also* 28 U.S.C. §2344 (Statutory deadline to file petitions for review). The *Ala. Power Co.* court reasoned that if it permitted late intervention in that case, it would be "to condone the impermissible – an evasion of clear jurisdictional requirements ordained by Congress for obtaining judicial review." *Ala. Power Co. v. Interstate Commerce Commission*, 852 F.2d 1361, 1366-67 (D.C. Cir 1988). In contrast to Section 2344 of the Hobbs Act, 28 U.S.C. §2344, the 30-day window in FRAP 15(d) is a court-promulgated rule, not a "jurisdictional requirement ordained by Congress."

Here, the Unions could not have filed a petition for review of the Silica Rule, because the Unions support the Silica Rule. The Unions' Motion to Intervene is not an attempt to end-run the 60-day jurisdictional deadline for filing petitions for review contained in the Mine Act. *See* 30 U.S.C. §811(d). Accordingly, the D.C. Circuit's decision in *Ala. Power Co.* is inapposite and does not support denial of the Unions' motion.

For its part, MSHA cites one case for the proposition that this Court should

---

[4] As discussed in greater detail below, filing windows contained in statutes are jurisdictional, while deadlines to file contained in court-made rules, such as the Federal Rules of Civil or Appellate Procedure, are claim-processing rules subject to forfeiture, waiver, and equitable exceptions. *See Bowles v. Russell*, 551 U.S. 205 (2007); *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17 (2017).

deny the Unions' motions as untimely. *See* MSHA Opp. at 5 (citing *Miljkovic v. Ashcroft*, 366 F.3d 580, 583 (7th Cir. 2004)). In *Miljkovic*, the Seventh Circuit notes in passing that the 30-day deadline for intervention motions in FRAP 15(d) is "jurisdictional" and the Court therefore has "no authority to create an exception." *Miljkovic v. Ashcroft*, 366 F.3d 580, 583 (7th Cir. 2004). This is simply bad law, as the principle has been rejected by subsequent Supreme Court decisions. In *Bowles v. Russell*, 551 U.S. 205 (2007), the Court held that while filing windows in statutes limit the subject-matter jurisdiction of an appellate court, filing deadlines set forth in court-promulgated rules, unless effectively restating a statutory deadline, are not jurisdictional. The Court later reaffirmed that distinction in *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17 (2017), where it vacated and reversed the Seventh Circuit (the same court that issued the *Miljkovic* decision), which had dismissed an appeal after concluding that the limit on extensions of time to file set forth in FRAP 4 was jurisdictional. In short, MSHA's reference to the *Miljkovic* decision is a reference to dicta that has been abrogated by two subsequent Supreme Court decisions, and does not support denial of the Unions' Motion to Intervene.

By contrast, the Unions have presented multiple cases in which a Court has granted a motion for intervention filed outside the 30-day window. *See United Gas Pipe Line Co. v. FERC*, 824 F.2d 417, 436 n. 22 (5th Cir. 1987); *Int'l Union of*

*Operating Engineers, Loc. 18 v. NLRB*, 837 F.3d 593, 595 (6th Cir. 2016); *See also Yelder v. United States DOL*, No. 21-3857, 2023 BL 78263 (6th Cir. Mar. 09, 2023); and *Nat'l Mining Ass'n v. Steelworkers*, 985 F.3d 1309, 1315 n. 3 (11th Cir. 2021). Indeed, in *National Mining Ass'n v. Steelworkers*, the Eleventh Circuit Court of Appeals permitted the United Mine Workers and the United Steelworkers to intervene on behalf of MSHA over two years after final briefs were filed, but before oral arguments were held.

As the Unions clarified in their Motion to Intervene, where a party moves to intervene in a timely manner after it becomes clear that no party in the case adequately represents its interests, a court may turn to the principles of timeliness articulated by the Supreme Court under FRCP 24. *See, e.g., Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 279 (2022).

Therefore, to the extent the Court denied the Unions' Motion to Intervene as untimely, the Unions respectfully request that the Court reconsider in light of the foregoing.

## II. MSHA Does Not Adequately Represent the Unions' Interests

Both the Industry Groups and MSHA argue that the Unions' Motion to Intervene should be denied because MSHA adequately represents the Unions' interests. MSHA Opp. at 10-14. Petitioners Opp. at 9-12. Both argue that the Unions must meet a heightened burden to show that MSHA inadequately represents the

Unions' interests, because of the *parens patriae* doctrine. The Industry Groups and MSHA are mistaken.

Under FRCP 24(a), a proposed intervenor must "(1) have a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." *Mausolf v. Babbitt*, 85 F.3d 1295, 1299 (8th Cir. 1996). Generally, the burden to establish inadequate protection is "minimal." *Trbovich v. Mine Workers*, 404 U.S. 528, 538 n. 10 (1972). Under some circumstances, however, the burden is heightened. When (1) one of the parties is an arm or agency of the government, (2) the case concerns a matter of "sovereign interest," and (3) the proposed intervenors' concern is also a matter of "sovereign interest," then the government, as "*parens patriae*" (or "parent of the country") will be presumed to represent all its citizens. *See Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996).

Importantly, the exception "does not necessarily apply in all cases to which the government is a party." *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996). Instead, as this Court explained in *Chiglo v. City of Preston*:

> the government only represents the citizen to the extent his interests coincide with the public interest. If the citizen stands to gain or lose from the litigation in a way different from the public at large, the *parens patriae* would not be expected to represent him.
> 
> 104 F.3d at 188 (8th Cir. 1997).

Consider *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993). In that case, a band of Native Americans sued the State of Minnesota to invalidate certain game and wildlife protection laws enacted by the State, on the grounds those laws conflicted with rights the Band had under an 1837 treaty with the federal government. Certain property owners of land arguably subject to the treaty moved to intervene. The Court granted the motion, and rejected the Band's argument that the property owners' interests were adequately represented by the State of Minnesota as *parens patriae*:

> Similarly, the landowners have interests in land that may be affected by this litigation. Although the Band has represented during the litigation that it does not seek to gain rights to hunt, fish, and gather on privately owed lands, the landowners express doubt as to whether this representation is binding. Even if the Band's rights ultimately are found to apply only on public lands, the landowners' property values may be affected by the depletion of fish and game stocks. Again, these interests are narrower and more parochial interests than the sovereign interest the state asserts in protecting fish and game.
> 
> 989 F.2d at 1001 (8th Cir. 1993).

By contrast, in *Chiglo v. City of Preston*, 104 F.3d 185 (8th Cir. 1997), this Court found that *parens patriae* did apply. In that case, the City of Preston, Minnesota, enacted an ordinance limiting tobacco advertisements, for the announced purpose of protecting children from being influence to use tobacco. Chiglo, a merchant subject to the ordinance, sued to challenge the validity of the ordinance,

arguing it was preempted by federal law. Four citizens of Preston moved to intervene after the city failed to appeal the district court's entry of summary judgment for Chiglo. The court denied the motion on the grounds that the citizens' interests were adequately represented by the City as *parens patriae*. There, the proposed intervenors were ordinary citizens of the City, who had no interest different than that of the public at large.

This is not a *parens patriae* case. The Unions' interests are more specific than the general public interest. The Unions are associations of miners who work in mines subject to the Silica Rule and are exposed to silica dust. The general public does not work in mines and is not exposed to silica dust. The Unions' interests, for purposes of this litigation, are solely the health and safety of their member miners. By contrast, the "public interest" in this case is a balance between various constituencies, including miners, miners' families, the mining industry, and non-mining sectors of the economy affected by disruptions in mining production and loss of income to miners. *See* 30 U.S.C. §801(a) (miners); 30 U.S.C. §801(b) (miners' families); 30 U.S.C. §801(d) (mining industry); 30 U.S.C. §801(f) (non-mining segment of economy). MSHA cannot be presumed to represent the Unions' interests as *parens patriae*.

Because this is not a *parens patriae* case, the Unions only have the "minimal"

burden of showing that MSHA does not adequately represent their interests. *Trbovich v. Mine Workers*, 404 U.S. 528, 538 n. 10 (1972). That the Unions have met this burden has been sufficiently established in the Unions' Motion to Intervene. Unions' Mot. at 19-21.

Therefore, to the extent the Court denied the Unions' Motion to Intervene by applying the *parens patriae* doctrine, the Unions respectfully request that the Court reconsider in light of the foregoing.

### III. Intervention Would Not Prejudice the Parties

MSHA and the Industry Groups both argue they would be prejudiced by the Unions' intervention. MSHA Opp. at 14-15; Petitioners Opp. at 12-14. The allegations of prejudice, however, are speculative, not grounded in fact, and undermined by the parties' own conduct.

First, MSHA argues that permitting the Unions to intervene would prejudice the parties, because it would "present[] the opportunity for the Unions to seek leave to file additional briefs, which would require additional motion practice by all parties and consume even more of the Court's and parties' resources." MSHA's Opp. at 14. This concern is baseless, because the Unions will not seek leave to file additional briefs. The Unions only request that, if permitted to intervene, they be permitted to participate in additional briefing if the Court orders it either *sua sponte* or at the

request of another party.

Second, MSHA argues that the Unions' requested intervention "may very well reopen [well-defined and developed] issues and potentially inject additional issues – and delay – into the case." MSHA's Opp. at 14. MSHA's alleged concern of delay is puzzling. The only issues the Unions would potentially reopen are those which have *created* substantial delays in the effective date of the Silica Rule and for this litigation, namely the administrative stay and the order holding the case in abeyance, both of which MSHA did not oppose.

On April 2, 2025, the Stone, Sand, and Gravel Petitioners filed a motion for a stay of the Silica Rule until its validity is resolved by this court. On April 9, 2025, MSHA filed a response in which it did not oppose that motion, and further represented that it would not oppose a motion to hold the case in abeyance until the end of MSHA's four-month enforcement pause of the silica rule. Thereafter, on April 11, 2025, Sorptive Minerals Institute Petitioners filed a motion to hold the case in abeyance. Presented with two unopposed motions, the Court granted the stay and held the case in abeyance for four months. As a result, the United Mine Workers' members in the coal industry are currently deprived of the protections of the Silica Rule and will continue to be for the foreseeable future, as coal operators need not comply with the Silica Rule prior to the resolution of the Petitioners' challenges by

11

this Court, and that resolution is now delayed by an additional four months. Indeed, it is now very likely that the case will not be resolved before the Silica Rule's compliance date for metal and nonmetal mines, substantially affecting thousands of members of both Unions. In short, MSHA itself is jointly responsible for significant delays in this litigation, and to the extent the Unions' intervention would reopen any issues, it would be for the purposes of expediting the litigation, not delaying it.

Third, the Industry Groups argue that intervention would be prejudicial because the Unions' positions as to the merits of their respective petitions are not known. Petitioners Opp. at 12. In fact, the Unions have always been clear in their support for the Silica Rule and the positions articulated by MSHA in its Response Brief. *See* Unions Amicus Brief at 4 ("the [Unions] support the Respondents: this Court should deny the petitions and affirm the Silica Rule."); *and* at 22 ("For the reasons set forth above as well as the reasons set forth in the Respondents' Brief, the Miner Representatives respectfully request that the Petitioners' Petition for Review be denied."); *See also* Unions Mot. at 14-15 ("MSHA filed a compelling and thoughtful brief in support of the validity of the Silica Rule, which the Unions supported in their previously filed brief as *amici curiae*."). Accordingly, the Industry Groups' concern is not grounded in fact and does not support denial of the Unions' motion.

In sum, the allegations of prejudice are speculative, not grounded in fact, or, in MSHA's case, undermined by its own conduct. Therefore, to the extent the Court denied the Unions' Motion to Intervene on the basis of the alleged prejudice to the parties, the Unions respectfully request that the Court reconsider in light of the foregoing.

## IV. The Unions Have Article III Standing

MSHA argues that the Unions cannot intervene because they do not have Article III standing. MSHA Opp. at 16-23. MSHA's argument confuses standing analysis, the relevant caselaw, and how it should be applied to the Union's Motion to Intervene. As set forth in the Unions' Motion, the Unions plainly have associational standing to support the enforcement of MSHA's Silica Rule for the protection of their members in a case where plaintiffs seek to vacate the Rule. Unions Mot. at 3-13.

First, MSHA asserts that "the relevant underlying allegations are not the validity of the Silica Rule itself, but the compliance dates," MSHA Opp. at 17. This is a misunderstanding of the law. In *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969 (8th Cir. 2014), this Court instructed that, for purposes of standing analysis, "the court should focus its attention on the pleadings because standing is to be determined as of the commencement of suit." *Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d

13

969, 973 (8th Cir. 2014) (internal quotations omitted). The "compliance dates" are an issue of recent vintage, brought to the fore by the Petitioners' motion for a stay and MSHA's sudden "enforcement pause." MSHA's fixation on the specifics of this case's "present procedural posture", MSHA Opp. at 17, is precisely *not* what this Court instructed in *Nat'l Parks Conservation Ass'n*.

This initial mistake infects and ultimately defeats the remainder of MSHA's analysis. MSHA argues that the Unions' injuries are its doubts as to MSHA's commitment to the Silica Rule, MSHA's current four-month enforcement pause, and a sudden shift in MSHA's litigation position, and that these injuries are "speculative, of recent origin, and not sufficiently concrete and particularized to meet this element of standing." This is incorrect. The Unions' injuries are their members' continued exposure to deadly silica dust, which is causing an epidemic of debilitating and irreversible respiratory illness among coal and metal and nonmetal miners. *See* Unions Mot. at 4-5.

The recent conduct by MSHA is not the subject of this suit; rather, it is evidence of the necessity of intervention by the Unions under circumstances where no party is currently representing the interests of the Unions' memberships. This distinction is perfectly clear in the Unions' Motion to Intervene, and MSHA's misapprehension or misrepresentation of the significance of its own actions should

not be persuasive here.

Therefore, to the extent the Court denied the Unions' Motion to Intervene on the basis of the Unions' alleged lack of Article III standing, the Unions respectfully request that the Court reconsider in light of the foregoing.

## V. CONCLUSION

No party cited a single authority in which a party is denied intervention in an administrative review proceeding solely for failing to intervene within the 30-days outlined in Rule 15(d); the *parens patriae* doctrine does not apply to this case; neither party can articulate substantive prejudice caused by the Unions' proposed intervention; and the Unions have Article III standing to intervene. For these reasons, the Unions respectfully requests that the Court reconsider and grant the Unions' motion for intervention.

|  | Respectfully submitted: |
|---|---|
|  | /s/ Kevin F. Fagan |
| David Jury | Kevin F. Fagan |
| Keren Wheeler | Hill Pickens |
| United Steelworkers | United Mine Workers of America |
| Boulevard of the Allies, Rm. 807 | 18354 Quantico Gateway Dr., Suite 200 |
| Pittsburgh, PA 15222-1209 | Triangle, VA 22172 |
| 412-562-2413 | 703-291-2431 |
| *Counsel to Proposed Intervenor United Steel, Paper and Forestry Rubber, Manufacturing, Energy, Allied Industrial, and Service Workers International Union, AFL-CIO/CLC* | *Counsel to Proposed Intervenor United Mine Workers of America International Union* |

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Motion complies with Fed. R. App. P. 27(a) and the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,480 words.

The undersigned further certifies that this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally-spaced typeface using Microsoft Word Version 2016 in Times New Roman 14 point font.

Dated:  May 14, 2025

*/s/ Kevin Fagan*
Kevin Fagan

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion was served on Appellees on May 14, 2025, by using the Court's CM/ECF electronic filing system, which will send notice to counsel of record:

Aaron R. Gelb
Kathryn M. McMahon
Mark M. Trapp
CONN & MACIEL

Emma Cusumano
Jennifer A. Ledig
Brad J. Mantel
Marcus David Reed
Matthew Ward
Office of the Solicitor

Keith Bradley
Peter S. Gould
Trevor Pirouz Kehrer
Kayla Marie Mendez
Morgan Alexis Miller
SQUIRE & PATTON